JAMES L. JACOBS, State Bar No. 158277
BARBARA E. TANZILLO, State Bar No. 168339
GCA LAW PARTNERS LLP
1891 Landings Drive
Mountain View, CA 94043
Telephone: (650) 428-3900
Facsimile: (650) 428-3901
e-mail: jjacobs @gcalaw.com
e-mail: btanzillo@gcalaw.com

Attorneys for Defendants
Naveen Chanana, Sanjeev Tyagi and Gaurav Gauba

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JAMES WARD,<br><br>    Plaintiff,<br><br>    vs.<br><br>NAVEEN CHANANA, SANJEEV TYAGI, GAUREV GAUBA and DOE 1 through DOE 20, inclusive,<br><br>    Defendants. | No. C07 6290 JW<br><br>DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>DATE:    June 23, 2008<br><br>TIME:    9:00 a.m.<br><br>JUDGE:   The Honorable James Ware<br><br>COURTROOM:   8, Fourth Floor |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 23, 2008, at 9:00 a.m., or as soon thereafter as

it may be heard by this Court, in the courtroom of the Honorable James Ware, District Judge

of the United States District Court for the Northern District of California, located in

Courtroom 8, Fourth Floor, 280 South First Street, San Jose, CA 95113, Defendants

NAVEEN CHANANA, SANJEEV TYAGI AND GAURAV GAUBA  (collectively herein,

1  "Defendants") will, and hereby do, move for this Court for an order to dismiss the Plaintiffs'

2  Complaint in this action pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil

3  Procedure.

4       Defendants seek dismissal of Plaintiff JAMES WARD's ("Plaintiff") entire

5  Complaint, and each of the causes of action contained therein, on the following grounds:  (1)

6  the first, second, third, fourth and fifth causes of action for RICO violations, intentional

7  misrepresentation, concealment, false promise, and negligent misrepresentation are all barred

8  by the applicable statutes of limitation and therefore fail to state a claim upon which relief

9  may be granted; (2) the first, second, third, fourth, fifth and sixth causes of action for RICO

10 violations, intentional misrepresentation, concealment, false promise, negligent

11 misrepresentation and conspiracy all fail to state a claim upon which relief may be granted;

12 (3) Plaintiff has failed to state his claims contained in the first, second, third, fourth and fifth

13 causes of action for RICO violations, intentional misrepresentation, concealment, false

14 promise, and negligent misrepresentation with the required particularity, as required under

15 Rule 9(b) of the Federal Rules of Civil Procedure.

16      Defendants' motion is based upon this Notice of Motion, Motion and Memorandum of

17 Points and Authorities, the pleadings, papers and records on file in this action, and such

18 additional argument or evidence as the Court may consider.

19

20 DATED:     April 23, 2008

21                 GCA LAW PARTNERS LLP
                   JAMES L. JACOBS

22                 BARBARA E. TANZILLO

23

24                 By: _____

25                    James L. Jacobs

26                 Attorneys for Defendants
                   NAVEEN CHANANA, SANJEEV

27                 TYAGI AND GAURAV GAUBA

28

# TABLE OF CONTENTS

Page No.

I.    INTRODUCTION ........................................................    1

II.   SUMMARY OF RELEVANT FACTS.....................................    2

III.  LEGAL ARGUMENT ................................................    6

      A.    STANDARDS FOR A MOTION TO DISMISS .................    6

      B.    PLAINTIFF'S FIRST CAUSE OF ACTION FOR RICO VIOLATIONS
            IS BARRED BY THE FOUR-YEAR STATUTE OF LIMITATIONS
            AND SHOULD BE DISMISSED WITH PREJUDICE ........    7

            1.    RICO Background…………………...…………………    7

            2.    Ward Knew, or Should Have Known, of His Injury
                  in May 1999, and Therefore is Barred from Asserting
                  His RICO Claim ..............................    7

            3.    The Complaint Does Not Assert A Basis For
                  Equitable Tolling ..........................    10

      C.    EVEN IF NOT TIME BARRED BY THE STATUTE OF
            LIMITATIONS, PLAINTIFF'S FIRST CAUSE OF ACTION
            FOR RICO VIOLATIONS FAILS TO STATE A
            CLAIM ........................................    11

      D.    ALL OF PLAINTIFF'S CLAIMS SOUNDING IN FRAUD SHOULD
            BE DISMISSED BECAUSE THEY FAIL TO ALLEGE FACTS TO
            SUPPORT THE ELEMENT OF DAMAGES ...............    12

      E.    ALL OF PLAINTIFF'S CLAIMS BASED ON FRAUD SHOULD
            BE DISMISSED BECAUSE THEY HAVE NOT BEEN PLED
            WITH PARTICULARITY ..........................    13

            1.    Fed. R. Civ. Proc. 9(b) Imposes a Heightened Pleading
                  Standard .................................    13

            2.    None of Plaintiffs' Claims Sounding In Fraud Have Been Pled
                  With Sufficient Particularity ...............    14

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA 94043
(650)428-3900

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

F.    PLAINTIFF'S FIFTH CAUSE OF ACTION FAILS TO STATE A CLAIM FOR THE INDEPENDENT REASON THAT IT IS BASED ON FUTURE PROMISES, WHICH CANNOT FORM THE BASIS FOR A NEGLIGENT MISREPRESENTATION CAUSE OF ACTION ............................................................................. 16

G.    PLAINTIFF'S SIXTH CAUSE OF ACTION FOR CONSPIRACY ALSO FAILS ............................................................................. 17

IV.    CONCLUSION............................................................................. 17

co A Law Partners LLP
1501 Landings Drive
Mountain View, CA 94043
(650) 426-3906

DEFENDANTS' MOTION TO DISMISS
COMPLAINT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

iv

1

## TABLE OF AUTHORITIES

2

Cases                                                                    Page No.

3

*Agency Holding Corp. v. Malley-Duff & Assocs, Inc.*,
    483 U.S. 143 (1987) ....................................................................... 7

4

5

*Anthony v. Yahoo! Inc.*,
    421 F.Supp.2d 1257 (N.D. Cal. 2006)........................................ 6, 12, 14

6

*Arroyo v. Wheat*,
    591 F.Supp. 136 (D. Nev. 1984) ...................................................... 15

7

8

*Bily v. Arthur Young & Co.*,
    3 Cal. 4th 370 (1992)..................................................................... 12, 14

9

10

*Balistrri v. Pacifica Police Dep't*,
    901 F.2d 696 (9th Cir. 1988)............................................................. 6

11

12

*Beneficial Standard Life Ins. Co., v. Madariaga*,
    851 F.2d 271 (9th Cir. 1988)............................................................. 7

13

14

*Clegg v. Cult Awareness Network*,
    18 F.3d 752 (9th Cir. 1994).............................................................. 6

15

16

*Cooper v. Equity Gen. Ins.*,
    219 Cal. App. 3d 1252 (1990)....................................................... 14, 15

17

*Cooper v. Pickett*,
    137 F.3d 616 (9th Cir. 1997)............................................................ 15

18

19

*Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*,
    122 F.3d 1211 (9th Cir. 1997)......................................................... 17

20

21

*Grimmett v. Brown*,
    75 F.3d 506 (9th Cir. 1996)........................................................... 7, 11

22

23

*Harrell v. 20th Century Insurance Co.*,
    934 F.2d 203 (9th Cir. 1991)............................................................. 9

24

*Holmes v. Securities Investor Protection Corp.*,
    503 U.S. 257 (1992) ...................................................................... 11

25

26

*In re:GlenFed Inc. Sec. Litig.*,

    42 F.3d 1541 (9th Cir. 1994) (*en banc*) .........................................15

27

28

*In re: Stac Elec. Sec. Litig.,*
    89 F.3d 1399 (9th Cir. 1996) ................................................... 14

*IUE AFL-CIO Pension Fund v. Herrmann,*
    9 F.3d 1049 (2nd Cir. 1993) ..................................................... 14

*Kidron v. Movie Acquisition Corp,*
    40 Cal. App. 4th 1571 (1995) .................................................... 17

*New England Data Services, Inc. v. Becher,*
    829 F.2d 286 (1st Cir. 1987) ..................................................... 15

*Pareto v. F.D.I.C.,*
    139 F.3d 696 (9th Cir. 1998) ...................................................... 2

*Pincay v. Andrews,*
    238 F.3d 1106 (9th Cir. 2001) ................................................ 7, 8

*Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp,*
    828 F.2d 211 (4th Cir. 1987) ..................................................... 11

*Richard P. v. Vista Del Mar Child Care Serv.,*
    106 Cal. App. 3d (1980) ...................................................... 12, 14

*Rotella v. Wood,*
    528 U.S. 549 (2000) .......................................................... 7-10

*Schreiber Distributing Co. v. Serv-Well Furniture Co.,*
    806 F.2d 1393 (9th Cir. 1986) ................................................... 14

*Sedima, S.P.R.L. v. Imrex Co.,*
    473 U.S. 479 (1985) .............................................................. 7

*Shamsian v. Atlantic Richfield Co..,*
    107 Cal. App. 4th 967 (2003) .................................................. 16

*Sixta v. Ochsner,*
    187 Cal.App.2d 485 (1960) ................................................ 12, 14

*Stansfield v. Starkey,*
    220 Cal. App. 3d (1990) ...................................................... 12, 14

*Stitt v. Williams,*
    919 F.2d 516 (9th Cir. 1990) ..................................................... 7

*Tarmann v. State Farm Mut. Aut. Ins. Co.,*
    919 F.2d 516 (1991) ......................................................... 16, 17

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ............................................... 14, 15

GCA Law Partners LLP
1301 Landings Drive
Mountain View, CA 94043
(650)428-3900

*Volk v. D.A. Davidson & Co.,*
   816 F.2d 1406 (9th Cir. 1987)................................................................7, 8, 10

*Weisbuch v. County of Los Angeles,*
   119 F.3d 778 (9th Cir. 1997)................................................ 6

*Western Mining Council v. Watt,*
   643 F.2d 618 (9th Cir.), *cert. denied*, 454 U.S. 1031 (1981) ............................ 6


<u>Federal Statutes</u>                    <u>Page No.</u>

18 U.S.C. § 1546 ...........................................................  7

18 U.S.C. § 1961(1) ......................................................  7

18 U.S.C. § 1961(5) ......................................................  7

18 U.S.C. §§ 1961-1968 ...............................................  7

18 U.S.C. § 1962(c) .......................................................  7

18 U.S.C. § 1964(c) .......................................................  7

Fed.R.Civ.Proc. R. 8(a) ...............................................  13

Fed.R.Civ.Proc. R. 9(b) ...............................................  2, 13, 14

Fed.R.Civ.Proc. R. 12(b)(6) ........................................  2, 6

Cal. Civ. Code §§1709-1710 .......................................  12, 14

Cal. Civ. Proc. Code §33(d) ........................................  9


<u>Other Authorities</u>                  <u>Page No</u>

Schwartzer, Tashima & Wagstaffe,
   *Cal. Prac. Guide: Fed Civ Proc. Before Trial,*
   (The Rutter Group 2008) ........................................  6, 15

5 Witkin, *Cal. Procedure*, Pleading §§667, 668 (4th ed. 1997) ...................................  12, 14

5 Witkin, *Summary of California Law,* Torts §45 (10th ed. 2005) ............................  17

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I. INTRODUCTION

3      Plaintiff James Ward ("Plaintiff" or "Ward") brings this action against three

4 individuals attempting to allege causes of action for Violation of Racketeer Influenced and

5 Corrupt Organizations Act ("RICO"), Intentional Misrepresentation, Concealment, False

6 Promise, Negligent Misrepresentation, and Conspiracy. After stripping away the hyperbole,

7 Plaintiff's allegations are that Defendants, the co-founders of Softline Consulting &

8 Integrators, Inc. ("Softline") which employed Plaintiff, repeatedly told Plaintiff that he would

9 significantly profit from a Softline Initial Public Offering ("IPO"). Based upon the potential

10 benefit of an IPO, Plaintiff remained employed at Softline, to his detriment, rather than pursue

11 other work opportunities.

12      The IPO never happened. Instead, Defendants sold Softline to KMPG, the global

13 auditing and professional services firm. As part of this transaction, Plaintiff was offered (and

14 accepted) partnership at KPMG. Approximately 8 years *after* Softline was sold, Plaintiff

15 contends he received an "anonymous letter," disclosing to him for the first time, that

16 Defendants previously had known they were precluded from conducting an IPO due to the

17 immigration status of two of the Defendants and other immigration law violations. According

18 to Plaintiff, Defendants knew that their immigration law misdeeds would be discovered

19 through the IPO due diligence process, so, as a result, an IPO was never really considered by

20 the Defendants as an option they would pursue.

21      Plaintiff attempts to craft a vast RICO conspiracy from this anonymous letter, but

22 Plaintiff's claim is both time-barred -- not surprising given that Plaintiff knew of his injury

23 more than 7 years before receiving the letter -- and fails to state a valid RICO cause of action.

24 Plaintiff also asserts multiple theories grounded in fraud – intentional and negligent

25 misrepresentation, concealment and false promise. These causes of action, however, all fail to

26 allege facts in support of a key element – damages – and thus fail to state a valid cause of

27

28

DEFENDANTS' MOTION TO DISMISS
COMPLAINT; MEMORANDUM OF POINTS       1
AND AUTHORITIES IN SUPPORT THEREOF

1  action.[1]  Similarly, the fraud-based claims also lack the requisite particularity required by

2  Fed.R.Civ.Proc. 9(b).  Finally, Plaintiff's conspiracy claim simply is not recognized as an

3  independent cause of action under California law.

## II.    SUMMARY OF RELEVANT FACTS[2]

5          Plaintiff's Complaint alleges that defendant Naveen Chanana ("Chanana"), a citizen of

6  India, entered the United States during the 1980-1985 time period.  (Complaint at ¶ 15).  Mr.

7  Chanana married a United States citizen and owned and operated a computer company,

8  Complete Computer Care, Inc. ("CCC"), which sold computer hardware and installed it into

9  offices in Southern California.  (*Id.* at ¶¶ 15, 16).

10         Prior to 1995, defendants Sanjeev Tyagi  ("Tyagi") and Gaurav Gauba ("Gauba")

11  entered the United States on student visas in order to obtain Master's degrees.  (*Id.* at ¶ 17).

12  Chanana and Tyagi were acquaintances while Tyagi attended Oregon State University.  (*Id.*).

13  Prior to 1995, Chanana obtained H-1B visas for both Gauba and Tyagi to permit them to work

14  in the United States for CCC.  (*Id.* at ¶ 18).  Neither Gauba nor Tyagi possessed a "specialty

15  occupation" in any capacity with CCC as purportedly required by H-1B visas.  (*Id.*).  Neither

16  Gauba nor Tyagi performed duties for CCC.  (*Id.* at ¶ 19).

17         Rather, in or about July 1995, Chanana, Tyagi and Gauba founded and incorporated

18  Softline.  (*Id.* at ¶¶  16, 20).  With H-1B visa status, Gauba and Tyagi's central duties with

19  Softline were business development and recruiting employees and managing the company as

20  owners.  (*Id.* at ¶ 21).  Gauba acted in the capacity of the Chief Executive Officer of Softline;

21  however, in the early stages of the corporation, Gauba, publicly, held himself out only as the

22  "Manager, SAP Practice" to cover up public knowledge that he was actually a co-founder,

23  owner, and officer of the corporation.  (*Id.* at ¶ 22).  Tyagi acted in the capacity of President of

24  Softline, and Chanana acted as its Chief Financial Officer.  (*Id.* at ¶¶  22, 23).  Softline was

25  _____

26  [1] The negligent misrepresentation cause of action fails for the independent reason that it is based on an alleged misrepresentation of a future event, which cannot serve as the basis for a negligent misrepresentation claim.

27  [2] In reviewing a Rule 12(b)(6) motion, the court must accept as true all material allegations in the complaint.

28  *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir.1998).  Therefore, Defendants assume for the purpose of this motion only, as they must, that Plaintiff's allegations are true.

1   formed as a firm providing consultants to Systems Applications and Products in Data

2   Processing ("SAP") and customers using SAP's software.  SAP is an international German

3   software applications company which, as of 1995, had successfully penetrated the

4   international market but had not yet penetrated the U.S. market, in part, because it did not

5   have adequate manpower to implement the software in the United States.  Softline provided

6   the necessary skilled manpower to implement SAP products.  (*Id.* at ¶ 24).

7        Softline never directly employed Gauba or Tyagi.  (*Id.* at ¶ 25).  Rather, CCC invoiced

8   Softline each month and CCC, in turn, paid Gauba and Tyagi's compensation even though

9   Gauba and Tyagi never worked for CCC and were the Chief Executive Officer and Chairman

10  of Softline.  (*Id.*).

11       On or about late 1996, Gauba and Tyagi returned to India and married.  Gauba and

12  Tyagi obtained H-1B visas for their spouses through Softline and their spouses worked at

13  Softline as recruiters and managers.  (*Id.* at ¶ 26).

14       Softline's business was exceedingly successful.  In 1995, it had sales of $638,000; in

15  1996, it had sales of $15.7 million, and in 1997, Softline was named the second fasting

16  growing company in the United States by *Entrepreneur Magazine*, increasing sales to over

17  $50 million.  (*Id.* at ¶ 27).

18       On or about early 1997, plaintiff James Ward ("Ward"), then an employee of the Bank

19  of America in its commercial lending department, was introduced to Softline.  (*Id.* at ¶ 29).

20  On or about February 1997, Ward attended a meeting at Softline's headquarters at which

21  "Defendants" attempted to recruit Ward away from Bank of America.  (*Id.* at ¶ 30).  During

22  the period from March 1997 to April 1997, Ward and "Defendants" met several times to

23  discuss the possibility of Ward joining Softline in a business development and sales capacity.

24  (*Id.* at ¶ 31).  During the pre-hire negotiations, "Defendants" repeatedly told Ward that

25  Softline would be sold publicly in an IPO and Ward would be on the "ground –floor" and gain

26  substantially.  (*Id.* at ¶ 32).  "Defendants" told Ward that key employees, such as himself,

27  would receive vested stock options in the upcoming IPO at a future date.  Plaintiff agreed to

28  quit Bank of America to come work for Softline, and commenced his "official employment"

1    at Softline on or about August 1, 1997. (*Id.* at ¶¶ 32, 33). Ward's starting base pay with

2    Softline was approximately $30,000 to $35,000 annually, with substantial commission

3    potential. (*Id.* at ¶ 33). The Complaint is silent as to Ward's compensation level in his prior

4    job at Bank of America.

5         On or about the spring of 1997, "Defendants" obtained "a fraudulent H-1B visa" for

6    Tyagi's brother who worked at Softline as a recruiter. (*Id.* at ¶ 35).

7         During the course of Ward's employment with Softline, Gauba repeatedly represented

8    that he was "positioning [Softline] for an IPO" and that Softline would "take care of [Ward,]"

9    and "Defendants" repeatedly told Ward they intended to sell the company in an IPO, even

10   though, Ward alleges, they did not have the good faith intent ever to take the company to IPO,

11   because by doing so Defendants would "risk exposure of their illegal immigration status and

12   thus risk financial ruin, imprisonment and deportation." (*Id.* at ¶ 36).

13        During the period in late 1997 through about early 1998, Softline expanded its

14   business to include, *inter alia*, the sale of proprietary software and other services. Ward was

15   active in these new efforts. (*Id.* at ¶ 41). "Defendants" repeatedly told Ward and other

16   unnamed "key employees" that the changes were designed to bring Softline to market in an

17   IPO. (*Id.* at ¶ 38).

18        On or about the fall of 1998, Ward's base pay was increased as part of a compensation

19   package for a new position, and his commission structure changed as a result of this new role.

20   (*Id.* at ¶ 40). Although the new payment structure would result in a short or medium-term

21   payment decrease for Ward, "Defendants" represented to Ward that these changes would

22   better position Softline for an IPO, and that Ward would be financially compensated in return

23   in the future, once Softline sold at an IPO. (*Id.* at ¶ 42). During the period from about January

24   1999 through about May 1999, Ward was on pace to earn an income equal to approximately

25   ***$425,000.00*** on an annualized basis. (*Id.* at ¶ 43, emphasis added).

26        During Ward's employment with Softline, "numerous recruiters" contacted him

27   attempting to recruit him for "other positions." Ward also received "numerous employment

28   inquiries" from his "business partners and competitors." Ward did not pursue any of these

1 opportunities because of the continuous reinforcement from "Defendants" that they were

2 moving towards an IPO, and that Ward would reap significant financial gain, implying that

3 the stock options "could" grow in value into the millions of dollars. (*Id.* at ¶ 44). During this

4 period, and through about May 1999, Softline grew to approximately 525 employees. (*Id.* at ¶

5 39).

6          On or about May 1999, instead of placing Softline up for an IPO, "Defendants" sold

7 Softline to a single purchaser, KPMG International ("KPMG"), for approximately $100

8 million. Ward (along with Gauba and Tyagi) were all made partners at KPMG. (*Id.*). On or

9 about October 2000, after more than one year, Ward left his partner position at KPMG to

10 pursue an opportunity at the software company, Commerce One, spearheading its sales effort

11 in Latin America. (*Id.* at ¶ 46).

12          In or about December of 2006 – more than seven years following KPMG's acquisition

13 of Softline and Ward's award of a lucrative KPMG partnership – Ward received an

14 anonymous letter, dated November 28, 2006, from New York. According to the Complaint,

15 the letter informed Ward of the following:

16          "(1) that GAUBA, CHANANA, and TYAGI fraudulently induced [Ward] to join

17          [Softline] with the promise of an eventual IPO; (2) that Softline could not have in

18          good faith completed an IPO because Gauba and Tyagi were in the country illegally,

19          and the deleterious effect of an IPO would be to place their respective immigration

20          backgrounds into close scrutiny; (3) that CHANANA, TYAGI, and GAUBA had

21          conspired to defraud the government in fraudulently obtaining numerous H-1B visas;

22          and (4) that a background check on the education and employment history of GAUBA

23          and TYAGI could potentially expose the fraud involved in establishing and growing

24          [Softline]."

25 (*Id.* at ¶ 47). The Complaint does not attach as an exhibit the anonymous letter Ward alleges

26 to have received. The Complaint in this matter was then filed approximately one year later,

27 on December 12, 2007.

28

GCA Law Partners LLP
2099 Landings Drive
Mountain View, CA 94043
(650) 428-3900

DEFENDANTS' MOTION TO DISMISS                    5
COMPLAINT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

1

### III. LEGAL ARGUMENT

2   As more fully set forth below, this Court should dismiss this Complaint because

3   Plaintiff's claims are either time barred, fail to state a cause of action, or are not pled with

4   sufficiently particularity.

5   **A. STANDARDS FOR A MOTION TO DISMISS**

6   A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is a

7   challenge to the pleadings in which the moving party asserts that the pleading "fails to state a

8   claim upon which relief can be granted." Fed.R.Civ.Proc. R. 12(b)(6).  A complaint may

9   properly be dismissed when it "exhibits a lack of cognizable legal theory or the absence of

10  sufficient facts alleged under a cognizable legal theory." *Anthony v. Yahoo! Inc.*, 421

11  F.Supp.2d 1257, 1260 (N.D. Cal. 2006) (*quoting Balistrri v. Pacifica Police Dep't*, 901 F.2d

12  696, 699 (9th Cir. 1988)).   Although well-pled factual allegations are to be accepted as true on

13  a motion to dismiss, "the court is not required to accept legal conclusions cast in the form of

14  factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."

15  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994); *Western Mining*

16  *Council v. Watt*, 643 F.2d 618, 624 (9th Cir.), *cert. denied*, 454 U.S. 1031 (1981).

17  Additionally, the court need not accept conclusary allegations, legal characterizations,

18  unreasonable inferences, and unwarranted deductions of fact when considering a motion to

19  dismiss.  Schwartzer, Tashima & Wagstaffe, *Cal. Prac. Guide: Fed. Civ. Proc. Before Trial*, ¶

20  9:221 (The Rutter Group 2008) ("Schwartzer Fed. Prac. Guide") (citations omitted).  Where

21  specific facts are pled in the complaint that are inconsistent with legal conclusions set forth in

22  the pleading, the complaint is not "saved" by the legal conclusions.  *Weisbuch v. County of*

23  *Los Angeles*, 119 F.3d 778, 783, fn. 1 (9th Cir. 1997).

24

25

26

27  / / /

28

DEFENDANTS' MOTION TO DISMISS
COMPLAINT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

6

**B. PLAINTIFF'S FIRST CAUSE OF ACTION FOR RICO VIOLATIONS IS BARRED BY THE FOUR-YEAR STATUTE OF LIMITATIONS AND SHOULD BE DISMISSED WITH PREJUDICE.**

**1. RICO Background.**

Congress enacted RICO to curb "racketeering activities,"[3] which are defined under the statute as any act chargeable under certain state criminal laws; indictable under certain federal laws; and certain offenses, including fraud and misuse of visas, permits, and other documents. 18 U.S.C. § 1961(1); 18 U.S.C. § 1546. The RICO laws bar individuals from, *inter alia,* conducting an enterprise's affairs through a pattern of racketeering activities. 18 U.S.C. § 1962(c). The statute requires defendants to engage in at least two predicate acts of racketeering activity which are sufficiently related and continuous to form a pattern. 18 U.S.C. § 1961(5); *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, n.14, 87 L.Ed. 2d 346, 105 S. Ct. 3275 (1985). Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore . . ." 18 U.S.C. § 1964(c).[4]

**2. Ward Knew, or Should Have Known, of His Injury in May 1999, and Therefore is Barred from Asserting His RICO Claim.**

Civil RICO claims have a four-year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Assocs, Inc,* 483 U.S. 143, 156, 97 L. Ed. 2d 121, 107 S. Ct. 2759 (1987); *Rotella v. Wood,* 528 U.S. 549, 552, 145 L. Ed. 2d 1047, 120 S. Ct. 1075 (2000); *Pincay v. Andrews,* 238 F.3d 1106, 1108 (9th Cir. 2001). The Ninth Circuit applies an "injury discovery" rule to determine when the statute of limitations begins to run: "[The] period begins to run when a plaintiff knows or should know of the injury that underlies his cause of action." *Id.* at 1109; *Grimmett v. Brown,* 75 F.3d 506, 512 (9th Cir. 1996).[5] A plaintiff may

---

[3] *See generally,* 18 U.S.C. §§ 1961-1968.

[4] Thus, the statute explicitly contemplates that damages flowing "directly from the predicate acts" are recoverable. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479 at 497; *Volk v. D.A. Davidson & Co.,* 816 F.2d 1406, 1415 (9th Cir. 1987).

[5] *See also Stitt v. Williams,* 919 F.2d 516, 525 (9th Cir. 1990) ("The limitations period [for civil RICO actions] begins to run when a plaintiff knows or should know of the injury which is the basis for the action."); *Beneficial Standard Life Ins. Co., v. Madariaga,* 851 F.2d 271, 275 (9th Cir. 1988) (holding that civil RICO claim accrues

1  be deemed to have constructive knowledge of the injury when "it had enough information to

2  warrant an investigation which, if reasonably diligent, would have led to discovery of the

3  [injury]." *Pincay*, 238 F.3d at 1110.  The "discovery of the injury, not discovery of the other

4  elements of a claim, is what starts the clock." *Rotella v. Wood,* 528 U.S. at 555.

5          Here, Ward claims that he was injured by virtue of relying upon Defendants' false

6  representations regarding a Softline IPO (and Defendants' concealment that an IPO would not

7  take place).  According to the Complaint, these statements (and concealment) caused Ward

8  ***not*** to pursue any of the other "contacts" and "employment inquiries" that he received from

9  recruiters, business partners and competitors.  Ward stayed at Softline in order to take

10  advantage of the financial benefits of the IPO he understood would happen at some future

11  date; his injury was the opportunities he lost by relying upon these statements and remaining

12  at Softline rather than pursuing the other professional opportunities the Complaint implies

13  were available to him.  Complaint at ¶¶ 44, 54.

14          Specifically, Ward discovered his injury when "[O]n or about May 1999, instead of

15  placing [Softline] up for an IPO, [Defendants] sold [Softline] to a single purchaser, KPMG

16  International [], for approximately $100 million, without ever attempting to sell Softline at an

17  IPO."  Complaint at ¶ 45.  The IPO that Ward had been waiting for, the contemplation of

18  which had caused him not to pursue alternative employment, was now foreclosed from

19  happening, now that Softline was sold to KPMG.   Ward understood this, and upon the sale of

20  Softline, accepted a partnership with KPMG.  As of May 1999, Ward clearly knew (or should

21  have known) that he would never realize the Softline IPO for which he had waited and for

22  which he had allegedly forsaken other opportunities.

23          Having discovered his injury in May 1999 when Softline was sold, Ward had four

24  years from the date of that discovery – or until May 2003 – in which to file his RICO

25

26  _____

27  "when [the plaintiff has] actual or constructive knowledge of the fraud."); *Volk v. D.A. Davidson & Co.*, 816
     F.2d at 1415 ("The limitations period begins to run when a plaintiff knows or should know of the injury which is
     the basis for the action.").

28

1    Complaint. Ward elected not to do so; rather, he waited *eight and one half years* – to

2    December 2007, to file his Complaint. Thus, the four-year statute of limitations for civil

3    RICO violations clearly precludes Ward from pursuing his First Cause of Action for RICO

4    violations against Defendants.[6]

5        Defendants nevertheless anticipate that Ward will attempt to argue that the December

6    2006 "anonymous letter" was his first revelation that Defendants allegedly induced him to

7    join Softline with the *fraudulent* promise of an IPO that Defendants knew would never

8    happen because it would bring to light alleged immigration law improprieties they committed

9    against the United States government. Even *assuming arguendo* that Ward first learned of

10   these alleged "predicate acts" for "racketeering activity" in December 2006, it still would not

11   serve to alter the statute of limitations analysis. As noted by the United States Supreme

12   Court, the "discovery of the injury" – which happened in May 1999 – and "*not* discovery of

13   the other elements of a claim" – which Ward alleges happened in December 2006" – "is what

14   starts the clock." *Rotella v. Wood,* 528 U.S. at 555. Indeed, the events of *Rotella* are, in

15   several respects, analogous to the events here.

16       In *Rotella,* the petitioner was admitted to a psychiatric hospital in 1985 with a

17   diagnosis of major depression. He was discharged one year later, in 1986. Eight years later,

18   the hospital's parent company and one of its directors pleaded guilty to charges of criminal

19   fraud perpetrated through improper relationships and illegal agreements between the company

20   and its doctors. Rotella learned of this plea agreement that same year (1994) and in 1997, he

21   filed a civil RICO claim against respondents, a group of doctors and related business entities.

22

23   ――――――――――――――――
     [6] For the same reasons, Plaintiff has failed to timely bring all of his causes of action grounded in fraud within the
24   statute of limitations. Under California law, the statute of limitations for fraud is three years. Cal. Civ. Proc.
     Code § 33(d). The Ninth Circuit has noted that under California's statute of limitations for fraud, "the three-year
25   period does not begin to run until the plaintiff has actual or constructive notice of the facts constituting the fraud.
     Constructive notice is knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud,
26   thus putting him on inquiry." *Harrell v. 20th Century Insurance Co.,* 934 F.2d 203, 206 (9th Cir. 1991).
     According to his Complaint, Plaintiff became aware that no IPO would occur when Softline was sold to KPMG
27   in May 1999 despite Defendants' alleged prior promises of an IPO. ( Complaint at ¶ 49). Therefore, Plaintiff
     should have raised any claims he had by 2002.
28

1    Rotella alleged that defendants had improperly conspired to admit, treat and retain him at their

2    facility for reasons related to their own financial interest – among the injuries Rotella alleged

3    he suffered were confinement for an excessive period because of the conspiracy to draw down

4    his insurance coverage, and fraudulent charges for unnecessary treatment – all such injuries he

5    had suffered as of the date of his discharge in 1986.

6          The parallels between Ward's claims and Mr. Rotella's are significant – both suffered

7    alleged injuries that they were aware of when their relationships with defendants came to an

8    end – Ward's when Softline was acquired and he became a KPMG partner and Rotella's when

9    he was discharged from the hospital.  Both Ward and Rotella then discovered the pattern of

10   RICO predicate acts approximately eight years after they knew (or should have known) of

11   their injuries.  Similarly, both Ward and Rotella discovered the pattern of predicate acts from

12   a third party document – Ward from the "anonymous letter" and Rotella from the plea

13   agreement.  In rejecting Rotella's claim, the Supreme Court reaffirmed that what matters for

14   statute of limitations purposes is the date of discovery of the injury – not the date of the

15   discovery of other elements of the claim, such as a complex racketeering pattern.  Here, since

16   Ward discovered his alleged injury in 1999, and then discovered other elements of his alleged

17   claim in 2007, he, like the petitioner in *Rotella*,  faces an insurmountable statute of limitations

18   hurdle, and his first cause of action for RICO violations should be dismissed with prejudice.

19         **3.**    **The Complaint Does Not Assert A Basis For Equitable Tolling.**

20         Although Ward may choose to argue that the statute of limitations on his RICO cause

21   of action should have been tolled until his receipt of the December 2006 "anonymous letter"

22   under the equitable tolling doctrine, Ward's Complaint will not support such an assertion.  To

23   invoke equitable tolling, Ward must plead with particularity, but has not, the circumstances

24   surrounding the application of an equitable tolling doctrine, such as fraudulent concealment.

25   For example, to invoke the doctrine of fraudulent concealment, Ward must both plead

26   particularized facts that Defendants actively mislead him and that he had neither actual nor

27   constructive knowledge of the facts constituting his cause of action despite his due diligence.

28   *Volk v. D.A. Davidson & Co.*, 816 F.2d at 1415-16.  Ward has not done so; the only assertion

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA 94043
(650)428-3900

1    he makes is the conclusary statement that "[Defendants], and each of them, actively sought to

2    conceal the facts alleged herein from the plaintiff and did so successfully until an unknown

3    whistle-blower brought the true facts to the plaintiff's attention." Complaint at ¶ 47. Ward

4    sets forth no proof of Defendants' "active concealment" of any facts nor does he detail any

5    diligent efforts of his own to discover his cause of action. At most, Defendants are accused of

6    failing to "own up" to their allegedly illegal conduct. However, "[a] failure to 'own up' does

7    not constitute *active* concealment." *Grimmett v. Brown*, 75 F.3d 506 at 515 *citing*

8    *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218 (4th Cir. 1987)

9    (emphasis in original).

10

11    **C. EVEN IF NOT TIME BARRED BY THE STATUTE OF LIMITATIONS,
         PLAINTIFF'S FIRST CAUSE OF ACTION FOR RICO VIOLATIONS FAILS
         TO STATE A CLAIM.**

12

13        As previously noted, RICO permits any person injured in his person or property "by

14    reason of" a violation of § 1962, to sue for his injuries. The "by reason" language of §

15    1964(c) has subsequently been held by the Supreme Court to require a showing by the

16    plaintiff that his injuries are "directly" and "proximately" caused by the defendant's

17    misconduct. *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268-270, 112

18    S.Ct. 1311, 117 L.Ed.2d 532 (1992). A primary consideration in determining whether a

19    plaintiff's injuries have been proximately caused by a defendant's violations of Section 1962

20    is the directness of the relationship "between the injury asserted and the injurious conduct

21    alleged." *Id.*, 503 U.S. at 269.

22        Here, there is at most an attenuated connection between Ward's injury (of having

23    forsaken unspecified opportunities to pursue the other "contacts" and "employment inquiries"

24    he received when working at Softline) and Defendants' injurious conduct (alleged violations

25    of federal visa/immigration laws pertaining to individuals unrelated to Ward). Under no

26    reasonable scenario can it be said that the alleged visa violations led to Ward's injuries. As

27    proximate cause is not present, Ward's allegations do not state a cause of action for violation

28    of civil RICO laws, and should be dismissed.

**D.  ALL OF PLAINTIFF'S CLAIMS SOUNDING IN FRAUD SHOULD BE DISMISSED BECAUSE THEY FAIL TO ALLEGE FACTS TO SUPPORT THE ELEMENT OF DAMAGES.**

Plaintiff alleges four causes of action sounding in fraud:  intentional misrepresentation, concealment, false promise and negligent misrepresentation.  "Damages" is a required element for each of these causes of action.  *Anthony,* 421 F.Supp.2d at 1260 (*quoting Stansfield v. Starkey,* 220 Cal. App. 3rd 59, 72-73, 269 Cal.Rptr. 337 (1990)); 5 Witkin, *California Procedure,* PLEADING, §§ 667, 668, pp. 122, 123 (4th ed. 1997) (damages is an element of an intentional misrepresentation claim); Cal. Civ. Code §§ 1709 & 1710, *Bily v. Arthur Young & Co.,* 3 Cal. 4th 370, 408-412 (1992); *Richard P. v. Vista Del Mar Child Care Serv.,* 106 Cal. App. 3d 860 (1980); *Sixta v. Ochsner,* 187 Cal. App. 2d 485, 489 (1960) (damages is an element of concealment, false promise and negligent misrepresentation claims).  However, nowhere in the Complaint does Plaintiff allege ***facts*** in support of his claim that he was damaged or harmed in an way by relying on either (a) the misrepresentation that Softline would be sold at an IPO or (b) the concealed fact that Softline could not be sold at an IPO.  For each of these fraud-based causes of action, the Complaint merely concludes that Plaintiff reasonably relied upon the misrepresentation or concealed fact and that he suffered harm as a direct and proximate result of his reliance.  (Complaint at ¶¶ 62, 63, 72, 73, 78, 79, 88, and 89).

Plaintiff's only action (or forbearance from action) specifically pled in the Complaint that was proximately caused by his reliance on the alleged "misrepresentations" or "concealment" was that Plaintiff "did not pursue" any of the "opportunities" he received due to the "continuous reinforcements" from Defendants that Softline would take the IPO route.  (Complaint at ¶ 44).  The "opportunities" to which Plaintiff refers are mere vague expressions of interest from unnamed third parties that could have led to the possibility of employment elsewhere:  "During [Plaintiff's] employment with [Softline], numerous recruiters contacted him attempting to recruit him for other positions.  Plaintiff also received numerous employment inquiries from his business partners and competitors."  *Id.*  ***The foregoing is the***

1   *entirety of the alleged harm/damages that Plaintiff has alleged with respect to these causes*
2   *of actions.*

3       Significantly, Plaintiff does not allege that he received any particular job offer, that the
4   recruiters who contacted him were contacting him with respect to a particular job opportunity
5   (as opposed to a general solicitation), that Plaintiff was assured that he would receive a job
6   offer if he wished to pursue the opportunity, what level of compensation was associated with
7   any job offer or position he would receive, and, perhaps most important for a determination of
8   whether Plaintiff suffered any damages or harm by staying at Softline, whether the
9   compensation associated with the "opportunities" he declined to pursue *exceeded* the
10   consideration he was currently receiving from Softline.  Indeed, Plaintiff asserts that when
11   employed by Softline at the time of its sale to KPMG he was "on pace to earn an income
12   equal to approximately $425,000 on an annualized basis" and he then became a partner at a
13   prestigious international accounting/professional services firm, KPMG.  Complaint at ¶ ¶
14   43,45.

15       Thus, to have been harmed by not pursuing these other vague "opportunities," Plaintiff
16   must plead facts to establish that he would suffer damages, i.e., that he would have earned
17   more than the significant sums he alleges he did receive by virtue of *staying* at Softline.
18   Absent those factual allegations, Plaintiff simply has not pled a necessary element for four of
19   his causes of actions, and they should all therefore be dismissed.  Moreover, because all of
20   these causes of action sound in fraud,  Plaintiff must plead these facts with the requisite
21   particularity required by Rule 9(b).  *See Section* III.E. *,infra.*

22
23   **E.  ALL OF PLAINTIFF'S CLAIMS BASED ON FRAUD SHOULD BE**
        **DISMISSED BECAUSE THEY HAVE NOT BEEN PLED WITH**
24       **PARTICULARITY**

25     **1.    Fed. R. Civ. Proc. R. 9(b) Imposes a Heightened Pleading Standard.**

26       While pleading for most causes of action only requires a "short and plain statement of
27   the claim showing that the pleader is entitled to relief," in claims of fraud, the circumstances
28   constituting fraud must be pled with particularity. Fed.R.Civ.Proc.R. 8(a) & 9(b).   Rule

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA 94043
(650)428-3900

1    9(b)'s heightened pleading requirement applies to all cases in which fraud is an essential

2    element of the claim and to claims in which the plaintiff relies upon the fraudulent conduct as

3    a basis for the claim.  *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1103 (9th Cir. 2003).

4    Among other things, the purpose of Rule 9(b)'s heightened pleading requirements is to alert

5    defendants to specific facts upon which a fraud claim is based and safeguard a "defendant's

6    reputation and goodwill from improvident charges of wrongdoing." *IUE AFL-CIO Pension*

7    *Fund v. Herrmann*, 9 F.3d 1049, 1057 (2d Cir. 1993);  *In re: Stac Elec. Sec. Litig.,* 89 F.3d

8    1399, 1405 (9th Cir. 1996).

9    **2.    None of Plaintiffs' Claims Sounding In Fraud Have Been Pled With
        Sufficient Particularity.**

10

11    State law determines the necessary elements of fraud that must be pled with

12    particularity.  *Vess*, 317 F.3d at 1103.  The elements of fraud and intentional

13    misrepresentation under California law are: "a representation, usually of fact, which is false,

14    knowledge of its falsity, intent to defraud, justifiable reliance upon the representation, and

15    damage resulting from that justifiable reliance." *Anthony,* 421 F.Supp.2d at 1260 (*quoting*

16    *Stansfield v. Starkey,* 220 Cal. App. 3rd 59, 72-73, 269 Cal.Rptr. 337 (1990)); *see also* 5

17    Witkin, *California Procedure*, PLEADING, §§ 667, 668, pp. 122, 123(4th ed. 1997).  Since the

18    elements of these causes of action are the same, the particularity pleading requirement of

19    fraud applies to the intentional misrepresentation cause of action.[7]

20    A cause of action for negligent misrepresentation under California law requires

21    misrepresentation of a material fact, no reasonable grounds for believing the representation

22    was true, intent to defraud, justifiable reliance, and damages. *Bily v. Arthur Young & Co.,* 3

23    Cal. 4th at 408-412; *Richard P. v. Vista Del Mar Child Care Serv.,* 106 Cal. App. 3d 860;

24    *Sixta v. Ochsner,* 187 Cal. App. 2d at 489;  *see also* Cal. Civ. Code §§ 1709 & 1710.  Plaintiff

25    must plead every element of the cause of action both factually and specifically.  The policy of

26

27    _____

28    [7] Similarly, the causes of action for concealment, false promise, and for RICO violations all sound in fraud and
must also be pled with particularity. *Vess,* 317 F.3d at 1103; *Schreiber Distributing Co. v. Serv-Well Furniture
Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

1   liberal construction of pleadings will not be invoked. *Cooper v. Equity Gen. Ins.*, 219 Cal.

2   App. 3d 1252, 1262 (1990).

3        "Averments of fraud must be accompanied by the who, what, when, where and how of

4   the misconduct charged." *Vess,* 317 F.3d at 1103 (*quoting Cooper v. Pickett*, 137 F.3d 616,

5   627 (9th Cir. 1997)) (internal quotes removed). The pleading should state the specific

6   fraudulent representations, identify the speaker, state when and where the statements were

7   made, and state the manner in which the representations were false and misleading. *In re:*

8   *GlenFed, Inc. Secur. Litig.*, 42 F.3d 1541, 1547, fn. 7 (9th Cir. 1994) (*en banc*). The pleading

9   should further indicate whether the statement was oral or written and, if written, identify the

10  document involved. *Arroyo v. Wheat*, 591 F.Supp. 136, 139 (D. Nev. 1984). Additionally, if

11  the allegation is based on information and belief, then the source of that information and

12  belief should be indicated. *New England Data Services, Inc. v. Becher*, 829 F.2d 286, 288 (1st

13  Cir. 1987). "In fraud cases involving several defendants, the complaint should set forth the

14  role of each defendant in the fraud." Schwartzer Fed. Prac. Guide, ¶ 8:46. Here, the

15  Plaintiff's Complaint falls far short of meeting this standard.

16        The allegations of the Complaint that pertain to the misrepresentations and

17  concealment can be summarized as the following: the Defendants (collectively) recruited

18  Plaintiff from his prior employment, met with Plaintiff several times to discuss the possibility

19  of Plaintiff joining Softline, repeatedly told Plaintiff that Softline would be sold in an IPO,

20  told Plaintiff he would gain substantially, and told Plaintiff he would receive vested stock

21  options in the IPO. However, other than with respect to the statement of Defendant Gauba

22  that Softline was being positioned for an IPO and that Softline would take care of Ward

23  (Complaint at ¶ 36), Plaintiff does not attribute any specific fraudulent statement to a

24  particular individual, and Plaintiff fails to meet the requirements of answering "who, what,

25  when, where and how," as required by *Vess.*

26        (1)  Who made the fraudulent statement(s)? Did each Defendant make allegedly

27  fraudulent statements to the Plaintiff, or did only some Defendants make fraudulent

28  statements to the Plaintiff?

1    (2)  What was that fraudulent statement by each Defendant?

2    (3)  When did each Defendant make each allegedly fraudulent statement?[8]

3    (4)  Where was each allegedly false statement made by each Defendant?

4    (5)  How did each Defendant make the allegedly fraudulent statement – orally,

5    electronically, or in writing?

6    Each of these questions must be specifically answered in the pleading to allow the

7    ultimate question, whether Plaintiff has a misrepresentation claim against each Defendant, to

8    be answered.  As currently pled, most of the generalized assertions are collectively attributed

9    to "Defendants" as a group rather than to individuals.  (*See e.g.* Complaint at ¶¶ 30, 31, 32,

10   36, and 38).  This does not satisfy Rule 9(b)'s requirements.

11
**F.  PLAINTIFF'S FIFTH CAUSE OF ACTION FAILS TO STATE A CLAIM FOR**
12   **THE INDEPENDENT REASON THAT IT IS BASED ON FUTURE**
     **PROMISES, WHICH CANNOT FORM THE BASIS FOR A NEGLIGENT**
13   **MISREPRESENTATION CAUSE OF ACTION.**

14   A claim for negligent misrepresentation cannot be based on a promise for future

15   actions.  *See, e.g., Tarmann v. State Farm Mut. Aut. Ins. Co.,*2 Cal. App. 4th 153, 159 (1991)

16   (appellate court affirmed sustaining of demurrer without leave to amend with regard to

17   negligent misrepresentation because statement was based on promise about future action).

18   *See also Shamsian v. Atlantic Richfield Co.*, 107 Cal. App. 4th 967, 983 (2003)("Negligent

19   misrepresentation is narrower than fraud" and requires the misrepresentation of a past or

20   existing material fact").  Since the allegedly false statement in the cause of action for

21   negligent misrepresentation is about Defendants' "intentions" about the future – that

22   Defendants "intended to sell [Softline] at an IPO" (Complaint at ¶ 84) and that Plaintiff

23   "would be compensated significantly once the IPO occurred" (*Id.*) – just as in  *Tarmann*, this

24   cause of action does not state a cause of action for negligent misrepresentation.  By definition,

25   an intention is a future promise, not an existing fact.  This case is similar to *Tarmann*, where

26

27
--------------------------------------------
28   [8]  The absence of the specific date for each fraudulent statement is important not only for pleading fraud with
     specificity but also for determining whether the statute of limitations bars a specific claim against a specific
     Defendant.

1    the plaintiffs alleged that defendant State Farm "would pay" for certain expenses. 2 Cal. App.

2    4th at 158. Here, the allegedly false statements were that an IPO would take place in the future

3    and that Plaintiff would be compensated once that happened.

### G. PLAINTIFF'S SIXTH CAUSE OF ACTION FOR CONSPIRACY ALSO FAILS.

6    Under California law, there is no separate and distinct tort cause of action for civil

7    conspiracy. *See Kidron v. Movie Acquisition Corp.* 40 Cal.App. 4th 1571, 1581 (1995);

8    *Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1228

9    (9th Cir. 1997); *see also* 5. Witkin, *Summary of California Law*, TORTS §45 at 111 (10th ed.

10   2005) ("[t]here is no separate tort of civil conspiracy;" and "[t]here is no civil action for

11   conspiracy to commit a recognized tort unless the wrongful act itself is committed and

12   damage results from that act"). Plaintiff must first state a valid claim for fraud which, as

13   detailed above, has not been done here.

14   Even if Plaintiff had properly pled a fraud claim, his boilerplate conspiracy allegations

15   are inadequate because they fail to differentiate between the roles of (and between) the

16   individual Defendants in the alleged conspiracy. The Complaint simply does not allege what

17   steps each Defendant took in furtherance of the conspiracy, who was involved, when they

18   acted, or with whom they communicated.

19   This Motion should be granted as to the Sixth Cause of Action on the independent

20   grounds that the Plaintiff fails to allege the elements of fraud with particularity.

### IV.    CONCLUSION

22   As discussed above, the causes of action asserted in this Complaint are either time

23   barred, fail to state a cause of action, or are pled with insufficient particularity. Accordingly,

24   Defendants respectfully request that the Court dismiss Plaintiff's Complaint and it do so

25   without leave to amend with respect to any cause of action that cannot be cured.

26

27

28

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA 94043
(650)428-3900

DEFENDANTS' MOTION TO DISMISS
COMPLAINT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF                    17

1    DATED:        April 23, 2008

2                                                 GCA LAW PARTNERS LLP
                                                  JAMES L. JACOBS
3                                                 BARBARA E. TANZILLO

4
                                                  By: _____
5                                                       James L. Jacobs

6
                                                  Attorneys for Defendants
7                                                 NAVEEN CHANANA, SANJEEV
                                                  TYAGI AND GAURAV GAUBA

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS
COMPLAINT; MEMORANDUM OF POINTS              18
AND AUTHORITIES IN SUPPORT THEREOF