JAMES L. JACOBS, State Bar No. 158277
BARBARA E. TANZILLO, State Bar No. 168339
GCA LAW PARTNERS LLP
1891 Landings Drive
Mountain View, CA  94043
Telephone: (650) 428-3900
Facsimile: (650) 428-3901
e-mail: jjacobs @gcalaw.com
e-mail: btanzillo@gcalaw.com

Attorneys for Defendants
Naveen Chanana, Sanjeev Tyagi and Gaurav Gauba

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| JAMES WARD,<br><br>          Plaintiff,<br><br>     vs.<br><br>NAVEEN CHANANA, SANJEEV TYAGI,<br>GAUREV GAUBA and DOE 1 through<br>DOE 20, inclusive,<br><br>          Defendants. | No. C07 6290 JW<br><br>DEFENDANTS' NOTICE OF MOTION<br>AND MOTION TO DISMISS FIRST<br>AMENDED COMPLAINT;<br>MEMORANDUM OF POINTS AND<br>AUTHORITIES IN SUPPORT THEREOF<br><br>DATE:     October 6, 2008<br><br>TIME:     9:00 a.m.<br><br>JUDGE:   The Honorable James Ware<br><br>COURTROOM:    8, Fourth Floor |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 6, 2008, at 9:00 a.m., or as soon thereafter

as it may be heard by this Court, in the courtroom of the Honorable James Ware, District

Judge of the United States District Court for the Northern District of California, located in

Courtroom 8, Fourth Floor, 280 South First Street, San Jose, CA  95113, Defendants

NAVEEN CHANANA, SANJEEV TYAGI AND GAURAV GAUBA  (collectively herein,

1  "Defendants") will, and hereby do, move for this Court for an order to dismiss the Plaintiffs'

2  First Amended Complaint in this action pursuant to Rules 9(b) and 12(b)(6) of the Federal

3  Rules of Civil Procedure.

4         Defendants seek dismissal of Plaintiff JAMES WARD's ("Plaintiff") entire First

5  Amended Complaint, and each of the causes of action contained therein, on the following

6  grounds:  (1) the first, second, third, fourth and fifth causes of action for RICO violations,

7  intentional misrepresentation, concealment, false promise, and negligent misrepresentation are

8  all barred by the applicable statutes of limitation and therefore fail to state a claim upon which

9  relief may be granted; (2) the first, second, third, fourth, and fifth causes of action for RICO

10 violations, intentional misrepresentation, concealment, false promise, and negligent

11 misrepresentation all fail to state a claim upon which relief may be granted; (3) Plaintiff has

12 failed to state his claims contained in the first, second, third, fourth and fifth causes of action

13 for RICO violations, intentional misrepresentation, concealment, false promise, and negligent

14 misrepresentation with the required particularity, as required under Rule 9(b) of the Federal

15 Rules of Civil Procedure.

16        Defendants' motion is based upon this Notice of Motion, Motion and Memorandum of

17 Points and Authorities, the pleadings, papers and records on file in this action, and such

18 additional argument or evidence as the Court may consider.

19

20 DATED:        June 23, 2008

21                                          GCA LAW PARTNERS LLP
                                            JAMES L. JACOBS
22                                          BARBARA E. TANZILLO

23
                                            By: _____
24
                                                 James L. Jacobs
25
                                            Attorneys for Defendants
26                                          NAVEEN CHANANA, SANJEEV
                                            TYAGI AND GAURAV GAUBA
27

28

1

## **TABLE OF CONTENTS**

2

3                                                                              Page No.

I.    INTRODUCTION AND PROCEDURAL BACKGROUND ...........................    1

II.   SUMMARY OF RELEVANT FACTS............................................................    3

III.  LEGAL ARGUMENT .....................................................................................    7

    A.    STANDARDS FOR A MOTION TO DISMISS ...................................    7

    B.    WARD'S FIRST CAUSE OF ACTION FOR RICO VIOLATIONS
       IS BARRED BY THE FOUR-YEAR STATUTE OF LIMITATIONS
       AND SHOULD BE DISMISSED WITH PREJUDICE .......................    8

       1.    RICO Background…………………….....…………………….    8

       2.    Ward Knew, or Should Have Known, of His Injury
           in May 1999, and Therefore is Barred from Asserting
           His RICO Claim ....................................................................    9

       3.    The First Amended Complaint Does Not Assert A Basis For
           Equitable Tolling ...................................................................    11

    C.    EVEN IF NOT TIME BARRED BY THE STATUTE OF
       LIMITATIONS, WARD'S FIRST CAUSE OF ACTION
       FOR RICO VIOLATIONS FAILS TO STATE A
       CLAIM ...............................................................................................    13

    D.    ALL OF WARD'S CLAIMS SOUNDING IN FRAUD SHOULD
       BE DISMISSED BECAUSE THEY FAIL TO ALLEGE FACTS TO
       SUPPORT THE ELEMENT OF DAMAGES ....................................    14

    E.    ALL OF WARD'S CLAIMS BASED ON FRAUD SHOULD
       BE DISMISSED BECAUSE THEY HAVE NOT BEEN PLED
       WITH PARTICULARITY ................................................................    16

       1.    Fed. R. Civ. Proc. 9(b) Imposes a Heightened Pleading
           Standard ................................................................................    16

       2.    None of Ward's Claims Sounding In Fraud Have Been Pled
           With Sufficient Particularity ................................................    17

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED          iii
COMPLAINT; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

F.    ALL OF WARD'S CAUSES OF ACTION SOUNDING IN FRAUD
      ARE BARRED BY THE THREE YEAR STATUTE OF
      LIMITATIONS ..................................................................................... 19

G.    WARD'S FIFTH CAUSE OF ACTION FAILS TO STATE
      A CLAIM FOR THE INDEPENDENT REASON THAT IT IS
      BASED ON FUTURE PROMISES, WHICH CANNOT FORM
      THE BASIS FOR A NEGLIGENT MISREPRESENTATION
      CAUSE OF ACTION ............................................................................ 20

IV.    CONCLUSION.......................................................................... 20

GCA Law Partners LLP
1999 Landings Drive
Mountain View, CA 94043
(650)428-3900

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED    iv
COMPLAINT; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

<u>Cases</u>                                                              <u>Page No.</u>

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.,*
    483 U.S. 143 (1987) ................................................................. 9

*Anthony v. Yahoo! Inc.,*
    421 F.Supp.2d 1257 (N.D. Cal. 2006)...................... 7, 14, 17

*Arroyo v. Wheat,*
    591 F.Supp. 136 (D. Nev. 1984) .................................. 17

*Bily v. Arthur Young & Co.,*
    3 Cal. 4th 370 (1992)........................................... 14, 17

*Balistrri v. Pacifica Police Dep't,*
    901 F.2d 696 (9th Cir. 1990)................................ 7

*Beneficial Standard Life Ins. Co., v. Madariaga,*
    851 F.2d 271 (9th Cir. 1988) ............................ 9

*Clegg v. Cult Awareness Network,*
    18 F.3d 752 (9th Cir. 1994) .......................... 7

*Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.,*
    122 F.3d 1211 (9th Cir. 1997) .................... 17

*Grimmett v. Brown,*
    75 F.3d 506 (9th Cir. 1996) ..................... 9, 12

*Harrell v. 20th Century Insurance Co.,*
    934 F.2d 203 (9th Cir. 1991) ................. 19

*Holmes v. Securities Investor Protection Corp.,*
    503 U.S. 257 (1992) ...........................13, 14

*In re:GlenFed Inc. Sec. Litig.,*
    42 F.3d 1541 (9th Cir. 1994) (en banc) .........17

*In re: Stac Elec. Sec. Litig.,*
    89 F.3d 1399 (9th Cir. 1996) .................. 17

*IUE AFL-CIO Pension Fund v. Herrmann,*
    9 F.3d 1049 (2nd Cir. 1993) ................ 17

*Jablon v. Dean Witter & Co.,*
    614 F.2d 677 (9th Cir. 1980)................ 19

1    *New England Data Services, Inc. v. Becher,*
2        829 F.2d 286 (1st Cir. 1987) ........................................................................ 17

3    *Pareto v. F.D.I.C.,*
4        139 F.3d 696 (9th Cir. 1998) ........................................................................ 3

5    *Pincay v. Andrews,*
        238 F.3d 1106 (9th Cir. 2001) ...................................................................... 9

6
7    *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp,*
        828 F.2d 211 (4th Cir. 1987) ........................................................................ 12

8    *Richard P. v. Vista Del Mar Child Care Serv.,*
9        106 Cal. App. 3d (1980) ......................................................................... 14, 17

10   *Robertson v. Dean Witter Reynolds, Inc.,*
        749 F.2d 530 (9th Cir. 1984) ........................................................................ 7

11   *Rotella v. Wood,*
12       528 U.S. 549 (2000) ............................................................................... 9-11

13   *Schreiber Distributing Co. v. Serv-Well Furniture Co.,*
        806 F.2d 1393 (9th Cir. 1986) ...................................................................... 17
14
15   *Sedima, S.P.R.L. v. Imrex Co.,*
        473 U.S. 479 (1985) ...................................................................................... 8

16   *Shamsian v. Atlantic Richfield Co..,*
17       107 Cal. App. 4th 967  (2003) ..................................................................... 20

18   *Sixta v. Ochsner,*
        187 Cal.App.2d 485 (1960) ......................................................................... 14

19   *Stansfield v. Starkey,*
20       220 Cal. App. 3d (1990) ......................................................................... 14, 17

21   *Stitt v. Williams,*
        919 F.2d 516  (9th Cir. 1990) ....................................................................... 9
22
23   *Tarmann v. State Farm Mut. Aut. Ins. Co.,*
        919 F.2d 516 (1991) .................................................................................... 20

24   *Vess v. Ciba-Geigy Corp. USA,*
25       317 F.3d 1097 (9th Cir. 2003) ................................................................. 16, 17

26   *Volk v. D.A. Davidson & Co.,*
27       816 F.2d 1406 (9th Cir. 1987) ............................................................... 8, 9, 12

28   *Weisbuch v. County of Los Angeles,*
        119 F.3d 778 (9th Cir. 1997) ......................................................................... 8

GCA Law Partners LLP
1991 Landings Drive
Mountain View, CA 94043
(650)426-3000.

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED
COMPLAINT; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF     vi

1    *Western Mining Council v. Watt,*
2        643 F.2d 618 (9th Cir.), *cert. denied*, 454 U.S. 1031 (1981) .............................    7

3    <u>Statutes</u>                                                              <u>Page No.</u>
4    18 U.S.C. § 1546 ...........................................................    8

5    18 U.S.C. § 1961(1) .......................................................    8
6
     18 U.S.C. § 1961(5) .......................................................    8
7
     18 U.S.C. §§ 1961-1968 ...................................................    8
8
     18 U.S.C. § 1962(c) .......................................................    8, 13
9
     18 U.S.C. § 1964(c) .......................................................    8
10
     Fed.R.Civ.Proc. R. 8(a) ..................................................    16
11
     Fed.R.Civ.Proc. R. 9(b) ..................................................    3, 16, 19
12
     Fed.R.Civ.Proc. R. 12(b)(6) ...........................................    3, 7
13
     Cal. Civ. Code §§1709-1710 ..........................................    14
14
     Cal. Civ. Proc. Code §33(d) ...........................................    19
15
     Cal. Labor Code §2922 .................................................    16
16

17

18   <u>Other Authorities</u>                                                    <u>Page No</u>
19   Schwartzer, Tashima & Wagstaffe,
20       *Cal. Prac. Guide: Fed Civ Proc. Before Trial,*
         (The Rutter Group 2008) ............................................    8, 18
21
     5 Witkin, *Cal. Procedure*, PLEADING §§667, 668 (4th ed. 1997) ...................14, 17
22
23

24

25

26

27

28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I. INTRODUCTION AND PROCEDURAL BACKGROUND.**

3       Plaintiff James Ward ("Plaintiff" or "Ward") brings this action against three

4   individuals attempting to allege causes of action for Violation of Racketeer Influenced and

5   Corrupt Organizations Act ("RICO"), Intentional Misrepresentation, Concealment, False

6   Promise, and Negligent Misrepresentation.  After stripping away the hyperbole, Ward's

7   allegations are that Defendants Naveen Chanana, Sanjeev Tyagi and Gaurav Gauba, the co-

8   founders of Softline Consulting & Integrators, Inc. ("Softline") which employed Ward from

9   *August 1977 through May 1999*, repeatedly told Ward that he would significantly profit from

10  the sale of Softline through an initial public offering ("initial public offering" or "IPO").

11  Based upon the potential benefit of an IPO, Ward remained employed at Softline, to his

12  detriment, rather than pursue other work opportunities.

13       The IPO never happened.  Instead, Defendants sold Softline to KMPG, the global

14  auditing and professional services firm, in May 1999.  As part of this transaction, Ward was

15  offered (and accepted) partnership at KPMG.  More than *7* years *after* Softline was sold, in

16  December 2006, Ward contends that he learned for the first time that Defendants never

17  intended to take Softline public through an IPO because they knew they were precluded from

18  conducting an IPO due to the immigration status of two of the Defendants and other

19  immigration law violations.  According to Ward, Defendants knew that their immigration law

20  misdeeds would be discovered through the IPO due diligence process, so, as a result, an IPO

21  was never really considered by the Defendants as an option they would pursue.  Ward waited

22  yet an additional year after learning this information  – to December 2007 – to file his initial

23  Complaint ("Complaint").

24       In response to the Complaint, Defendants filed a motion to dismiss which argued,

25  *inter alia*, that Ward's claims were barred by the applicable statutes of limitation – four years

26  for the RICO violations and three years for the fraud-based claims.  After Defendants were

27  forced to go to the expense and trouble of filing a motion to dismiss, Ward, on June 2, 2008,

28  rather than oppose their motion, filed his First Amended Complaint – implicitly conceding the

DEFENDANTS' MOTION TO DISMISS  FIRST  AMENDED
COMPLAINT: MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF

1

1  deficiencies of his initial Complaint.   Significantly, the nature of Ward's amendment to his

2  Complaint makes it clear that all of his claims continue to suffer from deficiencies which

3  cannot be cured by further amendment.

4         As more fully set forth below, in the initial Complaint, Ward argued he first became

5  aware of Defendants' "fraudulent and illegal conduct" through an "anonymous letter" that he

6  received in December 2006.  (Complaint at ¶ 47).[1]  Defendants argued, in response in their

7  motion to dismiss, that the Complaint suffered from obvious statute of limitations issues

8  given that the Complaint admits that it was filed more than 8 years following Ward's alleged

9  injury and his knowledge that Softline would not undertake an IPO.  Faced with this hurdle –

10  that the Complaint's allegations with respect to the so-called "anonymous letter" would not

11  cure the statute of limitations issue, Ward amended his Complaint in a manner which alleges

12  "less" rather than "more" and now all but concedes this his First Amended Complaint is time

13  barred.  The First Amended Complaint alleges, at paragraph 37, that:

14         "On or about December of 2006, for the first time PLAINTIFF learned that
15         Defendants, including Doe Defendants, and each of them, never intended to take
           Sofline to an initial public offering because of GAUBA and TYAGI's illegal
16         immigration status and the improper H-1B visas obtained for others through Softline
           and/or CCC.  Until that time, PLAINTIFF believed that the failure of Defendants,
17         including but not limited to CHANANA, GAUBA, and TYAGI, including Doe
18         Defendants, and each of them, to, to take Softline to an initial public offering was a
           business decision based solely on facts other than the illegal immigration status of its
19         founders, owners, and officers."

20

21
_____

22  [1]    Paragraph 47 of the initial Complaint provides, in relevant part, as follows:

23         "In or about December of 2006, for the first time PLAINTIFF became aware of
           DEFENDANTS' fraudulent and illegal conduct.  PLAINTIFF received an anonymous letter, dated
24         November 28, 2006, from New York sent to each of two of his prior addressed in Gilroy California.
           The letter informed PLAINTIFF of the following: (1) that GAUBA, CHANANA, and TYAGI
25         fraudulently induced [Ward] to join [Softline] with the promise of an eventual IPO; (2) that Sofline
           could not have in good faith completed an IPO because Gauba and Tyagi were in the country illegally,
26         and the deleterious effect of an IPO would be to place their respective immigration backgrounds into
           close scrutiny; (3) that CHANANA, TYAGI, and GAUBA had conspired to defraud the government in
27         fraudulently obtaining numerous H-1B visas; and (4) that a background check on the education and
           employment history of GAUBA and TYAGI could potentially expose the fraud involved in establishing
28         and growing [Softline]."

1   (First Amended Complaint ["FAC"] at ¶ 37).  Missing from the First Amended Complaint are

2   any "facts" concerning the "anonymous letter" (which Ward implicitly concedes does not cure

3   the statute of limitations issue) and no additional facts are pled which even attempt to address

4   this issue.  By the nature of the amendment reflected in Ward's proverbial "second bite" of

5   the apple, it is now clear that he will be unable to allege any set of facts which entitles him to

6   relief.

7          In addition to its statute of limitations problem, Ward's RICO claim also suffers from

8   an additional defect which renders it nonactionable -- that Ward's alleged injuries were not

9   "directly" and "proximately caused by Defendants' misconduct.  Likewise, all of Ward's other

10  causes of action based on theories grounded in fraud -- intentional and negligent

11  misrepresentation, concealment and false promise -- all fail to allege facts in support of a key

12  element – damages – and thus fail to state a valid cause of action.[2]  Similarly, the fraud-based

13  claims also lack the requisite particularity required by Fed.R.Civ.Proc. 9(b).

14                  **II.      SUMMARY OF RELEVANT FACTS[3]**

15         The First Amended Complaint alleges that defendant Naveen Chanana ("Chanana"), a

16  citizen of India, entered the United States during the 1980-1985 time period.  (FAC at  ¶ 9).

17  Mr. Chanana married a United States citizen and owned and operated a computer company,

18  Complete Computer Care, Inc. ("CCC"), which sold computer hardware and installed it into

19  offices in Southern California.  (*Id.*) .

20         Prior to 1995, defendants Sanjeev Tyagi  ("Tyagi") and Gaurav Gauba ("Gauba")

21  entered the United States on student visas in order to obtain Master's degrees.  (*Id.* at ¶ 10).

22  Chanana and Tyagi were acquaintances while Tyagi attended Oregon State University.  (*Id.*).

23  Prior to 1995, Chanana obtained H-1B visas for both Gauba and Tyagi to permit them to work

24  in the United States for CCC.  (*Id.* at ¶ 11).  Neither Gauba nor Tyagi possessed a "specialty

25  

---

26  [2] The negligent misrepresentation cause of action fails for the independent reason that it is based on an alleged
    misrepresentation of a future event, which cannot serve as the basis for a negligent misrepresentation claim.

27  

28  [3] In reviewing a Rule 12(b)(6) motion, the court must accept as true all material allegations in the complaint.
    *Pareto v. F.D.I.C.,* 139 F.3d 696, 699 (9th Cir.1998).  Therefore, Defendants assume for the purpose of  this
    motion only, as they must, that Plaintiff's allegations are true.

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED       3
COMPLAINT: MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF

1  occupation" in any capacity with CCC as purportedly required by H-1B visas. (*Id.*). Neither

2  Gauba nor Tyagi performed duties for CCC. (*Id.* at ¶ 12).

3      Rather, in or about July 1995, Chanana, Tyagi and Gauba founded and incorporated

4  Softline. (*Id.* at ¶ 13). With H-1B visa status, Gauba and Tyagi's central duties with Softline

5  were business development and recruiting employees and managing the company as owners.

6  (*Id.* at ¶ 14). Gauba acted in the capacity of the Chief Executive Officer of Softline; however,

7  in the early stages of the corporation, Gauba, publicly, held himself out only as the "Manager,

8  SAP Practice" in alleged violation of his H-1B status. (*Id.* at ¶ 15). Tyagi acted in the

9  capacity of President of Softline, and Chanana acted as its Chief Financial Officer. (*Id.* at ¶¶

10  15, 16). Softline was formed as a firm providing consultants to Systems Applications and

11  Products in Data Processing ("SAP") and customers using SAP's software. SAP is an

12  international German software applications company which, as of 1995, had successfully

13  penetrated the international market but had not yet penetrated the U.S. market, in part,

14  because it did not have adequate manpower to implement the software in the United States.

15  Softline provided the necessary skilled manpower to implement SAP products. (*Id.* at ¶¶ 16,

16  17).

17      Softline never directly employed Gauba or Tyagi. (*Id.* at ¶ 18). Rather, CCC invoiced

18  Softline each month and CCC, in turn, paid Gauba and Tyagi's compensation even though

19  Gauba and Tyagi never worked for CCC and were the Chief Executive Officer and President

20  of Softline. (*Id.*).

21      On or about late 1996, Gauba and Tyagi returned to India and married. Gauba and

22  Tyagi obtained H-1B visas for their spouses through Softline and their spouses worked at

23  Softline as recruiters and managers. (*Id.* at ¶ 19).

24      Softline's business was exceedingly successful. In 1995, it had sales of $638,000; in

25  1996, it had sales of $15.7 million, and in 1997, Softline was named the second fasting

26  growing company in the United States by *Entrepreneur Magazine*, increasing sales to over

27  $50 million. (*Id.* at ¶ 20).

28

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA 94043
(650)428-3900

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED    4
COMPLAINT; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF

1    On or about early 1997, Ward, then an employee of the Bank of America in its

2  commercial lending department, was introduced to Softline. (*Id.* at ¶ 22).  On or about

3  February 1997, Ward attended a meeting at Softline's headquarters at which

4  Defendants attempted to recruit Ward away from Bank of America. (*Id.* at ¶ 23).  During the

5  period from March 1997 to April 1997, Ward and Defendants met several times to discuss the

6  possibility of Ward joining Softline in a business development and sales capacity. (*Id.* at ¶

7  24).  During the pre-hire negotiations, "CHANANA, GAUBA, and/or TYAGI, individually

8  and together," repeatedly told Ward that Softline would be sold publicly in an IPO and Ward

9  would be on the "ground –floor" and gain substantially. (*Id.* at ¶ 24).  "CHANANA,

10  GAUBA, and/or TYAGI, individually and together," told Ward that key employees, such as

11  himself, would receive vested stock options in the upcoming IPO at a future date. (*Id.*)

12  Plaintiff agreed to quit Bank of America to come work for Softline, and commenced his

13  employment at Softline on or about August 1, 1997. (*Id.* at ¶¶ 24, 25).  Ward's starting base

14  pay with Softline was approximately $30,000 to $35,000 annually, with substantial

15  commission potential. (*Id.* at ¶ 25).  The First Amended Complaint is silent as to Ward's

16  compensation level in his prior job at Bank of America.

17    On or about the spring of 1997 (which was ***prior*** to Ward's employment with

18  Softline), "Defendants" obtained "a fraudulent H-1B visa" for Tyagi's brother who worked at

19  Softline as a recruiter. (*Id.* at ¶ 27).

20    During the course of Ward's employment with Softline, Gauba repeatedly represented

21  that he was "positioning Softline for an initial public offering" and that Softline would "take

22  care of [Ward,]" and "CHANANA, GAUBA, and/or TYAGI, individually and together,"

23  repeatedly told Ward they intended to sell the company in an initial public offering, even

24  though, Ward alleges, they "did not have good faith intent to ever take the company to initial

25  public offering, because by doing so they would "risk exposure of the illegal immigration

26  status of GAUBA and TYAGI and others and thus would risk financial ruin, imprisonment

27  and deportation." (*Id.* at ¶ 28).

28

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA 94043
(650)428-3900

1    During the period in late 1997 through about early 1998, Softline expanded its

2    business to include, *inter alia*, the sale of proprietary software and other services.   Ward was

3    active in these new efforts. (*Id.* at ¶¶ 29, 30).   "CHANANA, GAUBA, and/or TYAGI,

4    individually and together," repeatedly told Ward and other unnamed "key employees" that the

5    changes were designed to bring Softline to market in an initial public offering. (*Id.* at ¶ 29).

6    In the summer of 1998, Ward was offered an increase in base pay and a new

7    commission structure in connection with a new position (which was implemented in the fall

8    of 1998) that resulted in a short or medium term compensation decrease but which

9    "CHANANA, GAUBA, and/or TYAGI, individually and together," represented would better

10    position Softline for an initial public offering, and that Ward would be financially

11    compensated in return in the future, once Softline sold at an initial public offering.   (*Id.* at ¶¶

12    31, 32).   Plaintiff would not have agreed to the decrease in compensation without the

13    assurances that an initial public offering would be made (*Id.* at  ¶¶  31, 32) although the First

14    Amended Complaint is silent as to whether Ward had any alternatives but to accept the new

15    compensation structure or find new employment.   During the period from about January 1999

16    through about May 1999, Ward was on pace to earn an income equal to approximately

17    ***$425,000.00*** on an annualized basis.   (*Id.* at ¶ 33, emphasis added).

18    During Ward's employment with Softline, "numerous recruiters" contacted him

19    attempting to recruit him for "other positions."  Ward also received "numerous employment

20    inquiries" from his "business partners and competitors."   Ward did not pursue any of these

21    opportunities because of the continuous reinforcement from "Defendants" that they were

22    moving towards an initial public offering, and that Ward would reap significant financial gain,

23    implying that the stock options "could" grow in value into the millions of dollars. (*Id.* at ¶

24    35).   During this period, and through about May 1999, Softline grew to approximately 525

25    employees. (*Id.* at ¶ 34).

26    On or about May 1999, instead  of placing Softline up for an IPO, "Defendants" sold

27    Softline to a single purchaser, KPMG International ("KPMG"), for approximately $100

28    million.   Ward (along with Gauba and Tyagi) were all made partners at KPMG.   (*Id.* at ¶ 36).

1   On or about October 2000, after more than one year, Ward left his partner position at KPMG

2   to pursue an opportunity at the software company, Commerce One, spearheading its sales

3   effort in Latin America. (*Id.* at ¶ 36).

4       In or about December of 2006 – more than seven years following KPMG's acquisition

5   of Softline and Ward's award of a prestigious KPMG partnership – Ward learned (though

6   **unstated means** according to the First Amended Complaint and by virtue of an "anonymous

7   letter" according to the initial Complaint) that Defendants never intended for Softline to

8   proceed with an initial public offering due to Gauba and Tyagi's allegedly illegal immigration

9   status and because of the other H-1B visas allegedly improperly obtained. (*Id.* at ¶ 37). The

10  initial Complaint in this matter was then filed approximately one year later, on December 12,

11  2007.

12  ### III.  LEGAL ARGUMENT

13      As more fully set forth below, this Court should dismiss the First Amended Complaint

14  because Plaintiff's claims are either time barred, fail to state a cause of action, and/or are not

15  pled with sufficiently particularity.

16  ### A.  STANDARDS FOR A MOTION TO DISMISS.

17      A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is a

18  challenge to the pleadings in which the moving party asserts that the pleading "fails to state a

19  claim upon which relief can be granted." Fed.R.Civ.Proc. R. 12(b)(6). A complaint may

20  properly be dismissed when it "exhibits a lack of cognizable legal theory or the absence of

21  sufficient facts alleged under a cognizable legal theory." *Anthony v. Yahoo! Inc.*, 421

22  F.Supp.2d 1257, 1260 (N.D. Cal. 2006) (*quoting Balisterri v. Pacifica Police Dep't*, 901 F.2d

23  696, 699 (9th Cir. 1990)); see *also Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530,

24  533-34 (9th Cir. 1984). Although well-pled factual allegations are to be accepted as true on a

25  motion to dismiss, "the court is not required to accept legal conclusions cast in the form of

26  factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."

27  *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754-55 (9th Cir. 1994); *Western Mining

28  Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981), *cert. denied*, 454 U.S. 1031 (1981).

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED    7
COMPLAINT; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF

1    Additionally, the court need not accept conclusary allegations, legal characterizations,

2    unreasonable inferences, and unwarranted deductions of fact when considering a motion to

3    dismiss.  Schwartzer, Tashima & Wagstaffe, *Cal. Prac. Guide: Fed. Civ. Proc. Before Trial*, ¶

4    9:221 (The Rutter Group 2008) ("Schwartzer Fed. Prac. Guide") (citations omitted).  Where

5    specific facts are pled in the complaint that are inconsistent with legal conclusions set forth in

6    the pleading, the complaint is not "saved" by the legal conclusions.  *Weisbuch v. County of*

7    *Los Angeles*, 119 F.3d 778, 783, fn. 1 (9th Cir. 1997).

8

9    **B.  WARD'S FIRST CAUSE OF ACTION FOR RICO VIOLATIONS IS BARRED**
     **BY THE FOUR-YEAR STATUTE OF LIMITATIONS AND SHOULD BE**
10   **DISMISSED WITH PREJUDICE.**

11        **1.      RICO Background.**

12        Congress enacted RICO to curb "racketeering activities,"[4] which are defined under the

13   statute as any act chargeable under certain state criminal laws; indictable under certain federal

14   laws; and certain offenses, including fraud and misuse of visas, permits, and other documents.

15   18 U.S.C. § 1961(1); 18 U.S.C. § 1546.  The RICO laws bar individuals from, *inter alia,*

16   conducting an enterprise's affairs through a pattern of racketeering activities.  18 U.S.C. §

17   1962(c).  The statute requires defendants to engage in at least two predicate acts of

18   racketeering activity which are sufficiently related and continuous to form a pattern.  18

19   U.S.C. § 1961(5); *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 497, n.14, 87 L.Ed. 2d 346,

20   105 S. Ct. 3275 (1985).  Any person injured in his business or property by reason of a

21   violation of section 1962 of this chapter may sue therefore . . ."  18 U.S.C. § 1964(c).[5]

22

23

24

25   _____

26   [4] *See generally,* 18 U.S.C. §§ 1961-1968.

27   [5] Thus, the statute explicitly contemplates that damages flowing "directly from the predicate acts" are
     recoverable.  *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479 at 497; *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406,
28   1415 (9th Cir. 1987).

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA 94043
(650)428-3900

1

2. **Ward Knew, or Should Have Known, of His Injury in May 1999, and Therefore is Barred from Asserting His RICO Claim.**

2

3    Civil RICO claims have a four-year statute of limitations. *Agency Holding Corp. v.*

4    *Malley-Duff & Assocs, Inc,* 483 U.S. 143, 156, 97 L. Ed. 2d 121, 107 S. Ct. 2759 (1987);

5    *Rotella v. Wood,* 528 U.S. 549, 552, 145 L. Ed. 2d 1047, 120 S. Ct. 1075 (2000); *Pincay v.*

6    *Andrews,* 238 F.3d 1106, 1108 (9th Cir. 2001). The Ninth Circuit applies an "injury

7    discovery" rule to determine when the statute of limitations begins to run: "[The] period

8    begins to run when a plaintiff knows or should know of the injury that underlies his cause of

9    action." *Id.* at 1109; *Grimmett v. Brown*, 75 F.3d 506, 512 (9th Cir. 1996).[6] A plaintiff may

10    be deemed to have constructive knowledge of the injury when "it had enough information to

11    warrant an investigation which, if reasonably diligent, would have led to discovery of the

12    [injury]." *Pincay*, 238 F.3d at 1110. The "discovery of the injury, not discovery of the other

13    elements of a claim, is what starts the clock." *Rotella v. Wood,* 528 U.S. at 555.

14    Here, Ward claims that he was injured by virtue of relying upon Defendants' false

15    representations regarding a Softline IPO (and Defendants' concealment that an IPO would not

16    take place). According to the First Amended Complaint, these statements (and concealment)

17    caused Ward ***not*** to pursue any of the other "contacts" and "employment inquiries" that he

18    received from recruiters, business partners and competitors and to "accept" the change in his

19    compensation structure while he was still employed by Softline. Ward stayed at Softline in

20    order to take advantage of the financial benefits of the IPO he understood would happen at

21    some future date; his injury was the opportunities he lost by relying upon these statements and

22    remaining at Softline rather than pursuing the other professional opportunities the First

23    Amended Complaint implies were available to him. (FAC at ¶¶ 35, 48).

24

25    ---

[6] *See also Stitt v. Williams*, 919 F.2d 516, 525 (9th Cir. 1990) ("The limitations period [for civil RICO actions] begins to run when a plaintiff knows or should know of the injury which is the basis for the action."); *Beneficial*

26    *Standard Life Ins. Co., v. Madariaga*, 851 F.2d 271. 275 (9th Cir. 1988) (holding that civil RICO claim accrues "when [the plaintiff has] actual or constructive knowledge of the fraud."); *Volk v. D.A. Davidson & Co.*, 816

27    F.2d at 1415 ("The limitations period begins to run when a plaintiff knows or should know of the injury which is the basis for the action.").

28

G&A Law Partners LLP
1991 Landings Drive
Mountain View, CA 94043
(650)429-5900

1    Specifically, Ward discovered his injury when "[O]n or about May 1999, instead of

2    placing [Softline] up for an IPO, [Defendants] sold [Softline] to a single purchaser, KPMG

3    International [], for approximately $100 million, without ever attempting to sell Softline at an

4    IPO." FAC at ¶ 36. The IPO that Ward had been waiting for, the contemplation of which had

5    caused him not to pursue alternative employment, was now foreclosed from happening, now

6    that Softline was sold to KPMG. Ward understood this, and upon the sale of Softline,

7    accepted a partnership with KPMG. As of May 1999, Ward clearly knew (or should have

8    known) that he would never realize the Softline IPO for which he had waited and for which he

9    had allegedly forsaken other opportunities and for which he had also, allegedly, agreed to a

10   change in his compensation structure.

11       Having discovered his injury in May 1999 when Softline was sold, Ward had four

12   years from the date of that discovery – or until May 2003 – in which to file his RICO

13   Complaint. Ward elected not to do so; rather, he waited *eight and one half years* – to

14   December 2007, to file his initial Complaint. Thus, the four-year statute of limitations for

15   civil RICO violations clearly precludes Ward from pursuing his First Cause of Action for

16   RICO violations against Defendants.

17       Defendants nevertheless anticipate that Ward will attempt to argue that it was not until

18   December 2006 that he had his first revelation that Defendants allegedly induced him to join

19   Softline with the *fraudulent* promise of an IPO that Defendants knew would never happen

20   because it would bring to light alleged immigration law improprieties they committed against

21   the United States government. Even *assuming arguendo* that Ward first learned of these

22   alleged "predicate acts" for "racketeering activity" in December 2006, it still would not serve

23   to alter the statute of limitations analysis. As noted by the United States Supreme Court, the

24   "discovery of the injury" – which happened in May 1999 – and "*not* discovery of the other

25   elements of a claim" – which Ward alleges happened in December 2006" – "is what starts the

26   clock." *Rotella v. Wood,* 528 U.S. at 555. Indeed, the events of *Rotella* are, in several

27   respects, analogous to the events here.

28

1        In *Rotella,* the petitioner was admitted to a psychiatric hospital in 1985 with a

2    diagnosis of major depression.  He was discharged one year later, in 1986.  Eight years later,

3    the hospital's parent company and one of its directors pleaded guilty to charges of criminal

4    fraud perpetrated through improper relationships and illegal agreements between the company

5    and its doctors.  Rotella learned of this plea agreement that same year (1994), and in 1997 he

6    filed a civil RICO claim against respondents, a group of doctors and related business entities.

7    Rotella alleged that defendants had improperly conspired to admit, treat and retain him at their

8    facility for reasons related to their own financial interest – among the injuries Rotella alleged

9    he suffered were confinement for an excessive period because of the conspiracy to draw down

10   his insurance coverage, and fraudulent charges for unnecessary treatment – all such injuries he

11   had suffered as of the date of his discharge in 1986.

12       The parallels between Ward's claims and Mr. Rotella's are significant – both suffered

13   alleged injuries that they were aware of when their relationships with defendants came to an

14   end – Ward's when Softline was acquired and he became a KPMG partner and Rotella's when

15   he was discharged from the hospital.  Both Ward and Rotella then discovered the pattern of

16   RICO predicate acts approximately eight years after they knew (or should have known) of

17   their injuries.[7]  In rejecting Rotella's claim, the Supreme Court reaffirmed that what matters

18   for statute of limitations purposes is the date of discovery of the injury – not the date of the

19   discovery of other elements of the claim, such as a complex racketeering pattern.  Here, since

20   Ward discovered his alleged injury in 1999, and then discovered other elements of his alleged

21   claim in 2007, he, like the petitioner in *Rotella,*  faces an insurmountable statute of limitations

22   hurdle, and his first cause of action for RICO violations should be dismissed with prejudice.

23       **3.**    **The First Amended Complaint Does Not Assert a Basis for Equitable**

24           **Tolling.**

25       Although Ward may choose to argue that the statute of limitations on his RICO cause

26

27   ---

[7]    Another similarity between Ward and Rotella existed in the initial Complaint (but not in the First

28   Amended Complaint):  both Ward and Rotella discovered the pattern of predicate acts from a third party
document – Ward from the "anonymous letter" and Rotella from the plea agreement.

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA 94043
(650)428-3900

1   of action should have been tolled because he allegedly did not learn until December 2006 that

2   Defendants never intended to proceed with a Softline IPO (FAC at ¶ 37), the allegations of

3   Ward's First Amended Complaint, under the equitable tolling doctrine, do not support such an

4   assertion.  To invoke equitable tolling, Ward must plead with particularity, but has not, the

5   circumstances surrounding the application of the equitable tolling doctrine, such as fraudulent

6   concealment.  For example, to invoke the doctrine of fraudulent concealment, Ward must both

7   plead particularized facts that Defendants actively mislead him and that he had neither actual

8   nor constructive knowledge of the facts constituting his cause of action despite his due

9   diligence.  *Volk v. D.A. Davidson & Co.*, 816 F.2d at 1415-16.  Ward has not done so; in fact,

10  Ward asserts no proof of Defendants' "active concealment" of any facts nor does he detail any

11  diligent efforts of his own to discover his cause of action.  All that Ward alleges is that he first

12  learned of this new information in December 2006 but does not explain how or why it

13  happened then.  The First Amended Complaint is utterly devoid of any facts or explanations

14  which explain the circumstances of how Ward learned this information and is therefore utterly

15  devoid of any legal basis to invoke equitable tolling.  At most, Defendants are accused of

16  failing to "own up" to their allegedly illegal conduct.  However, "[a] failure to 'own up' does

17  not constitute *active* concealment."  *Grimmett v. Brown*, 75 F.3d at 515 *citing Pocahontas*

18  *Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218 (4th Cir. 1987) (emphasis in

19  original).

20          What is particularly relevant here is that in the initial Complaint Defendant provided

21  whatever additional information that he presumably had – his explanation of the "anonymous

22  letter."  (Complaint at ¶ 47).  In response to that Complaint, Defendants filed their motion to

23  dismiss challenging the legal sufficiency of Ward's RICO cause of action on the grounds that

24  it was barred by the statute of limitations and did not satisfy equitable tolling.   It is telling that

25  rather than amend the Complaint to seek to remedy this deficiency, Ward has essentially

26  "punted" on his RICO claim by deleting the only factual support he previously asserted – the

27  anonymous letter – and replacing it with ***nothing.***  It is axiomatic that, having been shown the

28  bar to proceeding with his RICO claim,  if Ward had additional factual support to avoid the

1  statute of limitations bar, he would have pled those facts in this, his First Amended

2  Complaint. Defendants respectfully submit that as Ward has not pled any additional facts in

3  support of his RICO claim (and has proactively deleted the deficient support he previously

4  cited), this Court can presume that Ward has no additional factual support for his RICO claim

5  and dismiss it with prejudice.

6

7  **C. EVEN IF NOT TIME BARRED BY THE STATUTE OF LIMITATIONS, WARD'S FIRST CAUSE OF ACTION FOR RICO VIOLATIONS FAILS TO STATE A CLAIM.**

8

9      As previously noted, RICO permits any person injured in his person or property "by

10 reason of" a violation of § 1962, to sue for his injuries. The "by reason" language of §

11 1964(c) has subsequently been held by the Supreme Court to require a showing by the

12 plaintiff that his injuries are "directly" and "proximately" caused by the defendant's

13 misconduct. *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268-270, 112

14 S.Ct. 1311, 117 L.Ed.2d 532 (1992). A primary consideration in determining whether a

15 plaintiff's injuries have been proximately caused by a defendant's violations of Section 1962

16 is the directness of the relationship "between the injury asserted and the injurious conduct

17 alleged." *Holmes*, 503 U.S. at 269.

18      Here, there is at most an attenuated connection between Ward's injury (of having

19 forsaken unspecified opportunities to pursue the other "contacts" and "employment inquiries"

20 he received when working at Softline and having agreed to continue his employment at

21 Softline with a revised compensation plan to which he would not have agreed had he known

22 that an initial public offering would not proceed) and Defendants' injurious conduct (alleged

23 violations of federal visa/immigration laws pertaining to individuals unrelated to Ward, which

24 violations allegedly occurred with respect to several visas obtained *prior to* Ward's

25 commencement of employment at Softline). Under no reasonable scenario can it be said that

26

27

28

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED    13
COMPLAINT; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF

1   the alleged visa violations which pre-dated Ward's employment caused Ward's injuries.[8]   As

2   proximate cause is not present, Ward's allegations do not state a cause of action for violation

3   of civil RICO laws, and should be dismissed.

4   **D.   ALL OF WARD'S CLAIMS SOUNDING IN FRAUD SHOULD BE
        DISMISSED BECAUSE THEY FAIL TO ALLEGE FACTS TO SUPPORT**

5   **THE ELEMENT OF DAMAGES.**

6          Ward alleges four causes of action sounding in fraud:  intentional misrepresentation,

7   concealment, false promise and negligent misrepresentation.  "Damages" is a required

8   element for each of these causes of action.  *Anthony,* 421 F.Supp.2d at 1262 (*quoting*

9   *Stansfield v. Starkey,* 220 Cal. App. 3rd 59, 72-73, 269 Cal.Rptr. 337 (1990)); 5 Witkin,

10  *California Procedure,* PLEADING, §§ 667, 668, pp. 122, 123 (4th ed. 1997) (damages is an

11  element of an intentional misrepresentation claim); Cal. Civ. Code §§ 1709 & 1710, *Bily v.*

12  *Arthur Young & Co.,* 3 Cal. 4th 370, 408-412 (1992); *Richard P. v. Vista Del Mar Child Care*

13  *Serv.,* 106 Cal. App. 3d 860, 863-66 (1980); *Sixta v. Ochsner,* 187 Cal. App. 2d 485, 489

14  (1960) (damages is an element of concealment, false promise and negligent misrepresentation

15  claims).  However, nowhere in the First Amended Complaint does Ward allege ***facts*** in

16  support of his claim that he was damaged or harmed in an way by relying on either (a) the

17  misrepresentation that Softline would be sold at an IPO or (b) the concealed fact that Softline

18  could not be sold at an IPO.

19         For each of these fraud-based causes of action, the First Amended Complaint merely

20  concludes that Ward reasonably relied upon the misrepresentation or concealed fact and that

21  he suffered harm as a direct and proximate result of his reliance.  (FAC at ¶¶ 57, 59, 69, 71,

22  79, 82, 90, and 92).  The only actions (or forbearances from action) Ward pleads were

23  _____

24  [8]  In concluding that it should not interpret RICO to enable all factually injured plaintiffs to recover simply
    because a defendant violated § 1962, the Supreme Court in *Holmes* cautioned against an expansive interpretation

25  of RICO's causation requirement:

26         "In a  philosophical sense, the consequences of an act go forward to eternity, and the causes of an event
           go back to the dawn of human events, and beyond.  But any attempt to impose responsibility upon such

27         a basis would result in infinite liability for all wrongful acts, and would 'set society on edge and fill the
           courts with endless litigation.'"

28  *Holmes,* 503 U.S. at 266, n.10  (citations omitted).

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED    14
COMPLAINT; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF

1    proximately caused by his reliance on the alleged "misrepresentations" or "concealment" were

2    that Ward (1) "did not pursue" any of the "opportunities" he received due to the "continuous

3    reinforcements" from Defendants that Softline would take the IPO route (*Id.* at ¶ 35), and (2)

4    did agree to a new compensation structure that he would not have agreed to absent the

5    assurances that an initial public offering would be made.  (*Id.* at ¶¶ 31, 32).

6         First, the "opportunities" to which Ward refers are mere vague expressions of interest

7    from unnamed third parties that could have led to the possibility of employment elsewhere:

8    "During [Ward's] employment with Softline, numerous recruiters contacted him attempting to

9    recruit him for other positions.  [Ward] also received numerous employment inquiries from

10   his business partners and competitors."  (*Id.* at ¶ 35).  Significantly, Ward does not allege that

11   he received any particular job offer, that the recruiters who contacted him were contacting him

12   with respect to a particular job opportunity (as opposed to a general solicitation), that Ward

13   was assured that he would receive a job offer if he wished to pursue the opportunity, what

14   level of compensation was associated with any job offer or position he would receive, and,

15   perhaps most important for a determination of whether Ward suffered any damages or harm

16   by staying at Softline, whether the compensation associated with the "opportunities" he

17   declined to pursue *exceeded* the consideration he was currently receiving from Softline.

18   Indeed, Ward asserts that when employed by Softline at the time of its sale to KPMG he was

19   "on pace to earn an income equal to approximately $425,000 on an annualized basis" and he

20   then became a partner at the prestigious international accounting/professional services firm,

21   KPMG.  (*Id.* at ¶¶ 33, 36).  To have been harmed by not pursuing these other vague

22   "opportunities," Ward must plead facts to establish that he would suffer damages, *i.e.*, that he

23   would have earned more from these unspecified opportunities than the significant sums he

24   alleges he did receive by virtue of *staying* at Softline.

25        Second, as to the change in Ward's compensation structure to which he agreed, Ward

26   simply concludes, without providing any facts, that his "overall income" decreased in

27   response to his commission restructuring and that he would not have accepted this new

28   compensation structure absent the IPO assurances.  (*Id. at* ¶ 32).  To adequately plead

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED
COMPLAINT; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF

15

1   damages, in addition to having to plead facts to substantiate his conclusary assertion that his

2   overall income decreased, Ward must also allege facts to demonstrate that had he declined the

3   new compensation structure presented to him by Defendants, Ward, in fact, would have been

4   entitled to retain both his job and his former compensation structure.

5       Yet, Ward, has not alleged any facts to rebut the presumption under California law

6   that he was an at-will employee, (*see* Cal. Labor Code § 2922), or from which one could

7   conclude that he was entitled to continued employment under his former compensation

8   structure -- even though his employer elected to change both his role and his compensation

9   structure.  Nor has Ward pled facts demonstrating that, had he objected to either change,

10  Ward, an at will employee, would have remained employed with his old compensation

11  structure intact even though his employer desired otherwise and even though Ward is

12  presumed to be an employee terminable at will.

13      Absent those factual allegations, Plaintiff simply has not pled a necessary element for

14  four of his causes of actions, and they should all therefore be dismissed.  Moreover, because

15  all of these causes of action sound in fraud,  Plaintiff must plead these facts with the requisite

16  particularity required by Rule 9(b).  *See Section* III.E. ,*infra.*

17

18  **E.  ALL OF WARD'S CLAIMS BASED ON FRAUD SHOULD BE DISMISSED
    BECAUSE THEY HAVE NOT BEEN PLED WITH PARTICULARITY**

19      **1.     Fed. R. Civ. Proc. R. 9(b) Imposes a Heightened Pleading Standard.**

20      While pleading for most causes of action only requires a "short and plain statement of

21  the claim showing that the pleader is entitled to relief," in claims of fraud, the circumstances

22  constituting fraud must be pled with particularity. Fed.R.Civ.Proc.R. 8(a) & 9(b).   Rule

23  9(b)'s heightened pleading requirement applies to all cases in which fraud is an essential

24  element of the claim and to claims in which the plaintiff relies upon the fraudulent conduct as

25  a basis for the claim.  *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1103 (9th Cir. 2003).

26  Among other things, the purpose of Rule 9(b)'s heightened pleading requirements is to alert

27  defendants to specific facts upon which a fraud claim is based and safeguard a "defendant's

28  reputation and goodwill from improvident charges of wrongdoing." *IUE AFL-CIO Pension*

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA 94043
(650)428-3900

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED
COMPLAINT; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF              16

1    *Fund v. Herrmann*, 9 F.3d 1049, 1057 (2d Cir. 1993)(citations omitted);  *In re: Stac Elec. Sec.*

2    *Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996).

3    **2.    None of Ward's Claims Sounding in Fraud Have Been Pled with**
**Sufficient Particularity.**

4

5    State law determines the necessary elements of fraud that must be pled with

6    particularity.  *Vess*, 317 F.3d at 1103-04.  The elements of fraud and intentional

7    misrepresentation under California law are: "a representation, usually of fact, which is false,

8    knowledge of its falsity, intent to defraud, justifiable reliance upon the representation, and

9    damage resulting from that justifiable reliance."  *Anthony*, 421 F.Supp.2d at 1262 (*quoting*

10   *Stansfield v. Starkey*, 220 Cal. App. 3rd 59, 72-73, 269 Cal.Rptr. 337 (1990)); *see also* 5

11   Witkin, *California Procedure*, PLEADING, §§ 667, 668, pp. 122, 123 (4th ed. 1997).  Since the

12   elements of these causes of action are the same, the particularity pleading requirement of

13   fraud applies to the intentional misrepresentation cause of action.[9]  A cause of action for

14   negligent misrepresentation under California law requires misrepresentation of a material fact,

15   no reasonable grounds for believing the representation was true, justifiable reliance, and

16   damages.  *Bily v. Arthur Young & Co.*, 3 Cal. 4th at 407-412; *Richard P.*, 106 Cal. App. 3d at

17   865-67; *Anthony*, 421 F. Supp.2d at 1262 (citations omitted).

18   Averments of fraud must be accompanied by the who, what, when, where and how of

19   the misconduct charged.  The pleading should state the specific fraudulent representations,

20   identify the speaker, state when and where the statements were made, and state the manner in

21   which the representations were false and misleading.  *In re: GlenFed, Inc. Secur. Litig.*, 42

22   F.3d 1541, 1547, fn. 7 (9th Cir. 1994) (*en banc*).  The pleading should further indicate whether

23   the statement was oral or written and, if written, identify the document involved.  *Arroyo v.*

24   *Wheat*, 591 F.Supp. 136, 139 (D. Nev. 1984).  Additionally, if the allegation is based on

25   information and belief, then the source of that information and belief should be indicated.

26   *New England Data Services, Inc. v. Becher*, 829 F.2d 286, 288 (1st Cir. 1987).  "In fraud cases

27   _____

28   [9] Similarly, the causes of action for concealment, false promise, and for RICO violations all sound in fraud and
must also be pled with particularity.  *Vess*, 317 F.3d at 1103; *Schreiber Distributing Co. v. Serv-Well Furniture
Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED        17
COMPLAINT; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF

1    involving several defendants, the complaint should set forth the role of each defendant in the

2    fraud." Schwartzer Fed. Prac. Guide, ¶ 8:46.  Here, the First Amended Complaint falls far

3    short of meeting this standard.

4        The allegations of the First Amended Complaint that pertain to the misrepresentations

5    and concealment can be summarized as the following:  the Defendants (collectively) recruited

6    Ward from his prior employment, met with Ward several times to discuss the possibility of

7    Ward joining Softline, repeatedly told Ward that Softline would be sold in an IPO, told Ward

8    he would gain substantially, and told Ward he would receive vested stock options in the IPO.

9    However, other than with respect to the statement of Defendant Gauba that Softline was being

10    positioned for an IPO and that Softline would take care of Ward (FAC at ¶ 28), Ward does not

11    attribute any specific fraudulent statement to a particular individual, and Ward fails to meet

12    the requirements of answering "who, what, when, where and how."

13        (1)  Who made the fraudulent statement(s)? Did each Defendant make allegedly

14    fraudulent statements to Ward, or did only some Defendants make fraudulent statements to

15    Ward?

16        (2)  What was that fraudulent statement by each Defendant?

17        (3)  When did each Defendant make each allegedly fraudulent statement?[10]

18        (4)  Where was each allegedly false statement made by each Defendant?

19        (5)  How did each Defendant make the allegedly fraudulent statement – orally,

20    electronically, or in writing?

21        Each of these questions must be specifically answered in the pleading to allow the

22    ultimate question, whether Ward has a misrepresentation claim against each Defendant, to be

23    answered.  As currently pled, most of the generalized assertions are collectively attributed to

24    the ambiguous and imprecise catch-all: "CHANANA, GAUBA, and/or TYAGI, individually

25    and together" rather than attributing the statements to the specific individual or individuals

26

27

---

28    [10]  The absence of the specific date for each fraudulent statement is important not only for pleading fraud with
specificity but also for determining whether the statute of limitations bars a specific claim against a specific
Defendant.

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED    18
COMPLAINT: MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF

1   Ward contends made them.  The characterization that the statements were made by one or two

2   individuals "and/or" a different individual and that the statements were made "individually"

3   and "together" while possibly covering all the theoretical combinations and permutations that

4   exist does not provide any real specificity.  (*See e.g.* FAC at ¶¶ 24, 29, 31).  This does not

5   satisfy Rule 9(b)'s requirements.

6

7   **F.  ALL OF WARD'S CAUSES OF ACTION SOUNDING IN FRAUD ARE
       BARRED BY THE THREE YEAR STATUTE OF LIMITATIONS.**

8           For the same reasons that apply to Ward's RICO cause of action, he has failed to

9   timely bring all of his causes of action grounded in fraud within the statute of limitations.

10  Under California law, the statute of limitations for fraud is three years.  Cal. Civ. Proc. Code §

11  33(d).  The Ninth Circuit has noted that under California's statute of limitations for fraud,

12  "the three-year period does not begin to run until the plaintiff has actual or constructive notice

13  of the facts constituting the fraud.  Constructive notice is knowledge of facts sufficient to

14  make a reasonably prudent person suspicious of fraud, thus putting him on inquiry."  *Harrell*

15  *v. 20th Century Insurance Co.,* 934 F.2d 203, 206 (9th Cir. 1991) (citations omitted).  *See also*

16  *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).  According to his First

17  Amended Complaint, Ward became aware that no IPO would occur when Softline was sold to

18  KPMG in May 1999 despite Defendants' alleged prior promises and representations of an

19  IPO. ( FAC at ¶ 36).  Thus, the inaccuracy of those promises and representations was

20  demonstrated by the sale of Softline to KPMG in lieu of an IPO.  Ward, who accepted

21  employment with KMPG, indisputably knew at that time that the prior promises and

22  representations upon which he now bases his fraud claims, were false.  Ward had three years

23  from this notice – or until May 2002 – to assert his claims, yet he waited five additional years.

24  Thus, his fraud claims are time barred.[11]

25

26

27  _____

28  [11]      As with the RICO cause of action, Ward has failed to allege in this, his second attempt at a complaint,
    any facts which would justify tolling the statute of limitations with respect to his fraud claims.

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA 94043
(650)428-3900

1

**G.  WARD'S FIFTH CAUSE OF ACTION FAILS TO STATE A CLAIM FOR THE**
2    **INDEPENDENT REASON THAT IT IS BASED ON FUTURE PROMISES,**
    **WHICH CANNOT FORM THE BASIS FOR A NEGLIGENT**
3    **MISREPRESENTATION CAUSE OF ACTION.**

4          A claim for negligent misrepresentation cannot be based on a promise for future

5    actions.  *See, e.g., Tarmann v. State Farm Mut. Aut. Ins. Co.*, 2 Cal. App. 4th 153, 159 (1991)

6    (appellate court affirmed sustaining of demurrer without leave to amend with regard to

7    negligent misrepresentation because statement was based on promise about future action).

8    *See also Shamsian v. Atlantic Richfield Co.*, 107 Cal. App. 4th 967, 983 (2003) ("Negligent

9    misrepresentation is narrower than fraud" and requires the misrepresentation of a past or

10    existing material fact").  Since the allegedly false statement in the cause of action for

11    negligent misrepresentation is about Defendants' "intentions" about the future – that

12    Defendants "intended to sell [Softline] at an initial public offering" (FAC at ¶ 87) and that

13    Plaintiff "would be compensated significantly once the IPO occurred" (*Id.*) – just as in

14    *Tarmann*, this cause of action does not state a cause of action for negligent misrepresentation.

15    By definition, an intention is a future promise, not an existing fact.  This case is similar to

16    *Tarmann*, where the plaintiffs alleged that defendant State Farm "would pay" for certain

17    expenses.  2 Cal. App. 4th at 158.  Here, the allegedly false statements were that an IPO would

18    take place in the future and that Plaintiff would be compensated once that happened.

19

20                              **V.  CONCLUSION**

21          As discussed above, the causes of action asserted in this First Amended Complaint are

22    time barred, fail to state a cause of action, and/or are pled with insufficient particularity.

23    Accordingly, Defendants respectfully request that the Court dismiss Plaintiff's First Amended

24

25

26

27

28

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA 94043
(650)428-3900

1    Complaint and that it do so without leave to amend with respect to any cause of action

2    that cannot be cured.

3

4    DATED:        June 23, 2008

5                                                    GCA LAW PARTNERS LLP
                                                     JAMES L. JACOBS
6                                                    BARBARA E. TANZILLO

7

8                                                    By: _____
                                                          James L. Jacobs
9
                                                     Attorneys for Defendants
10                                                   NAVEEN CHANANA, SANJEEV
                                                     TYAGI AND GAURAV GAUBA
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA 94043
(650)428-3900