IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| James Ward,<br><br>      Plaintiff,<br>  v.<br><br>Naveen Chanana, et al.,<br><br>      Defendants. | NO. C 07-06290 JW<br><br>**ORDER DENYING DEFENDANTS'**<br>**MOTION TO DISMISS** |

## I. INTRODUCTION

James Ward ("Plaintiff") brings this action against Naveen Chanana ("Chanana"), Sanjeev Tyagi ("Tyagi") and Gaurev Gauba ("Gauba") (collectively, "Defendants"), alleging, *inter alia*, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), intentional misrepresentation and concealment. Plaintiff alleges that Defendants induced Plaintiff to accept lower compensation and forego other employment opportunities by misrepresenting to Plaintiff that Defendants' company would be sold publicly in an initial public offering.

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. (hereafter, "Motion," Docket Item No. 18.) The Court found it appropriate to take the matter under submission without oral argument. See Civ. L.R. 7-1(b). Based on the papers submitted to date, the Court DENIES Defendants' Motion to Dismiss.

## II.  BACKGROUND

In a First Amended Complaint filed on June 2, 2008, Plaintiff alleges as follows:

Plaintiff is a citizen of Rhode Island.  (First Amended Complaint for Damages and Equitable Relief ¶ 1, hereafter, "Complaint," Docket Item No. 13.)  Defendants are citizens of California.  (Complaint ¶ 2-4.)

Prior to July 1995, Chanana obtained H-1B visas for Gauba and Tyagi to permit them to work for Chanana's company, Complete Computer Care.  (Complaint ¶¶ 9-11.)  Ordinarily, H1-B visas require a "specialty occupation."  (Id. ¶ 11.)  In violation of United States immigration laws, Gauba and Tyagi never performed "speciality" duties for Complete Computer Care.  (Id. ¶ 12.)  Instead, Gauba and Tyagi ran another company co-founded by Chanana, Softline Consulting & Integrators, Inc. ("Softline").  (Id. ¶ 14.)

Softline's business was to provide consultants to a particular software company and to customers using that company's software.  (Complaint ¶ 15.)  Chanana, Gauba and Tyagi concealed the fact that they ran Softline from the public and the Immigration and Naturalization Service.  (Id. ¶ 18.)  In late 1996, Gauba and Tyagi wrongly obtained H1-B visas for their wives, who were employed in non-specialist positions at Softline.  (Id. at ¶ 20.)[1]

From February through April 1997, Plaintiff and Defendants had several discussions about Plaintiff joining Softline as an employee.  (Complaint ¶ 23-24.)  During the pre-hiring negotiations, Defendants repeatedly told Plaintiff that Softline would be sold publicly and that Plaintiff would be "on the ground floor" and reap substantial gains.  (Id. ¶ 24.)  Based on Defendants' assurances, Plaintiff quit his job and joined Softline in April 1997.  (Id.)

During the course of Plaintiff's employment with Softline, Defendants repeatedly told Plaintiff that they intended to sell the company in an initial public offering.  (Complaint ¶

---

[1] Later in the spring of 1997, Defendants also obtained a fraudulent H-1B visa for Tyagi's brother, Rajiv Tyagi.  (Complaint ¶ 27.)

28.) Defendants knew, however, that they did not have a good faith intent to ever take the company public because doing so would risk revealing their immigration violations. (Id.)

In the summer of 1998, Defendants asked Plaintiff to take on a new position at Softline that would result in a short or medium term compensation decrease. (Complaint ¶ 31.) Defendants told Plaintiff that this change would better position Softline for an initial public offering, and that Plaintiff would be financially compensated in the future when Softline was up for public sale. (Id.) In reliance on Defendants' assurances, Plaintiff agreed to the lower compensation. (Id.)

In the fall of 1998, Defendants asked Plaintiff to agree to a new compensation structure that would result in a further short or medium term compensation decrease. (Complaint ¶ 32.) Again, Plaintiff agreed to the new compensation structure in reliance on Defendants' assurances that Softline would be sold through an initial public offering. (Id.) In further reliance on Defendants' repeated assurances, Plaintiff declined numerous other employment opportunities. (Id. ¶ 35.)

In May 1999, instead of selling Softline to the public, Defendants sold Softline to KPMG International ("KPMG"). (Id. ¶ 36.) Plaintiff was made a partner at KPMG, but he made less money than he would have in an initial public offering of Softline. (Id.) In December of 2006, Plaintiff learned for the first time that Defendants never intended to take Softline to an initial public offering because that would risk revealing Gauba and Tyagi's illegal immigration status and the improper H-1B visas obtained through Chanana and Complete Computer Care.

On the basis of the allegations outlined above, Plaintiff alleges five causes of action: (1) Violation of RICO, 18 U.S.C. § 1962(c); (2) Intentional Misrepresentation; (3) Concealment; (4) False Promise; and (5) Negligent Misrepresentation.

Presently before the Court is Defendants' Motion to Dismiss.

### III. STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief may be granted against that defendant. Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-534 (9th Cir. 1984). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). Any existing ambiguities must be resolved in favor of the pleading. Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973).

However, mere conclusions couched in factual allegations are not sufficient to state a cause of action. Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988). The complaint must plead "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007). Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment. Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

### IV. DISCUSSION

**A.  First Cause of Action:  Violation of 18 U.S.C. § 1962(c) (RICO)**

Defendant moves to dismiss Plaintiff's First Cause of Action for violation of RICO on the ground that Plaintiff's claim is time-barred by the four-year statute of limitations because he discovered his injury in May 1999.[2]  (Motion at 9.)

A complaint is properly dismissed under Rule 12(b)(6) where it is apparent on the face of the pleading that plaintiff's claims are barred by the statute of limitations. Jablon v. Dean Witter & Co.,

---

[2] Defendants also move to dismiss Plaintiff's RICO claim on the grounds that the Complaint does not allege that Plaintiff was injured "by reason of" a violation of 18 U.S.C. § 1962. (Motion at 13 (citing 18 U.S.C. § 1964(c) ).) The Court, however, finds that Plaintiff has alleged that Defendants' misrepresentations were part of their purported RICO violation, and that he was injured as a proximate cause of those misrepresentations. (See Complaint ¶ 49.)

4

1  614 F.2d 677, 682 (9th Cir. 1980). This is true where expiration of the limitations period is an

2  affirmative defense, because Federal Rule of Civil Procedure 9(f) "makes averments of time and

3  place material for the purposes of testing the sufficiency of a complaint." Suckow Borax Mines

4  Consol. v. Borax Consol., 185 F.2d 196, 204 (9th Cir. 1951). When a motion to dismiss is based on

5  the running of the statute of limitations, "it can be granted only if the assertions of the complaint,

6  read with the required liberality, would not permit the plaintiff to prove that the statute was tolled."

7  Jablon, 614 F.2d at 682. In contrast, where the statute of limitations question turns on factual issues

8  that may be disputed, the question is more appropriately addressed at a later stage of the proceeding.

9  See id.

10  The statute of limitations for civil RICO actions is four years. Pincay v. Andrews, 238 F.3d

11  1106, 1108 (9th Cir. 2001). The Ninth Circuit has continually followed the "injury discovery" rule

12  for the statute of limitations under civil RICO actions.[3] Id. at 1109. Under this rule, "the civil RICO

13  limitations period begins to run when a plaintiff knows or should know of the injury that underlies

14  his cause of action." Id. (quoting Grimmet v. Brown, 75 F.3d 506, 511 (9th Cir. 1996)). "Thus, the

15  'injury discovery' rule creates a disjunctive two-prong test of actual or constructive notice, under

16  which the statute begins running under either prong." Id.

17  Plaintiff alleges that his injury arose out of the following: (1) The summer 1998 decrease in

18  his compensation; (2) the fall 1998 decrease in his compensation; (3) the loss of stock options worth

19  millions only if Softline went public; (4) Plaintiff's forbearance with respect to other employment

20  opportunities; and (5) the decrease in compensation as a result of his new employment with KPMG.

21  (Complaint ¶¶ 31-32, 35-36.) Plaintiff further alleges as follows:

22  On or about December of 2006, for the first time Plaintiff learned that Defendants . . . never
    intended to take Softline to an initial public offering because of Gauba and Tyagi's illegal

23

---

24  [3] "Although the Supreme Court has overruled other statute of limitations standards for civil RICO . . . it has left [the Ninth Circuit's] 'injury discovery' rule intact." Pincay, 238 F.3d at 1109
25  n.3. The Supreme Court held in Rotella v. Wood that, for a RICO claim, "we have been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the
26  clock." 528 U.S. 549, 555 (2000). The Court, however, left open the question of which version, among multiple formulations of the injury discovery rule percolating through various circuits, was
27  appropriate. See id. at 555 n.2.

28  
5

United States District Court
For the Northern District of California

immigration status and the improper H-1B visas obtained for others through Softline and Complete Computer Care.

(Complaint ¶ 37.) Based on these allegations, the Court must determine whether Plaintiff had either actual or constructive notice of his RICO injury before December 2003.

### 1. Actual Notice

Assuming the allegations of the Complaint to be true, Plaintiff did not actually discover his injury until December 2006. Under the actual-notice prong of the Ninth Circuit's injury discovery rule, the four-year limitations period began to run in December 2006. Plaintiff filed this action on December 12, 2007, well within four years. Accordingly, the Court finds that Plaintiff's RICO claim is not time-barred under the actual notice prong of the injury discovery rule.

### 2. Constructive Notice

Defendants contend that, under the constructive-notice prong of the Ninth Circuit's injury discovery rule, the statute of limitations period began to run in May 1999. (Motion at 10.) According to Defendants, Plaintiff knew or should have known in May 1999 that the initial public offering he was waiting for could not happen because Softline had been sold to KPMG. (Id.) Plaintiff asserts that the statute of limitations did not begin to run until December 2006 because, until then, Plaintiff believed that Defendants failure to take Softline public was purely a business decision. (Opposition Memorandum of Points and Authorities Re Defendants' Motion to Dismiss First Amended Complaint at 3, hereafter, "Opposition," Docket Item No. 19.)

Normally, a court must leave the question of whether a plaintiff knew or should have known of his injury to the jury. Living Design, Inc. v. E.I. Dupont de Nemours & Co., 431 F.3d 353, 365 (9th Cir. 2005) (citing Beneficial Standard Life Ins. Co. v. Madariaga, 851 F.2d 271, 275 (9th Cir. 1988)). However, where the allegations make it clear that a plaintiff "had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the fraud," dismissal is appropriate. See Pincay, 238 F.3d at 1110 (quoting Beneficial Standard Life, 851 F.2d at 275). In deciding whether a plaintiff has enough information to constitute constructive notice, the focus is on the plaintiff's knowledge of his injury. See Id. at 1109.

1 Here, Plaintiff's allegations make it clear that Softline's initial public offering was foreclosed
2 following the May 1999 sale to KPMG. (Complaint ¶ 36.) By 1999, therefore, Plaintiff knew that
3 he had suffered financial loss as a result of KPMG's acquisition of Softline. These allegations do
4 not, however, connect Plaintiff's awareness of financial loss to Plaintiff's concomitant awareness of
5 wrongdoing on the part of Defendants. As a predicate for dismissing Plaintiff's RICO claim on the
6 grounds that Plaintiff had constructive notice of his RICO injury, the Court requires that Plaintiff
7 have had the ability to connect his nominal "injury" to an actual violation of the RICO statute.
8 Otherwise, Plaintiff would be penalized for an inability to distinguish between financial injury as a
9 result of Defendants' wrongdoing, and financial loss arising out of potentially legitimate business
10 decisions. At the very least, the fact-intensive nature of this inquiry suggests that further factual
11 development is required before the Court can conclusively determine that Plaintiff's RICO claim is
12 untimely on grounds of constructive notice.

13 Accordingly, the Court DENIES Defendants' Motion to Dismiss Plaintiff's First Cause of
14 Action for violation of RICO, 18 U.S.C. § 1962(c).

15 **B.     Causes of Action Sounding in Fraud**

16 Defendants move to dismiss Plaintiff's Second, Third, Fourth and Fifth Causes of Action on
17 the ground that Plaintiff has failed to bring his claims within the time allowed by the applicable
18 statutes of limitations.[4] Defendants contend that Plaintiff's causes of action sounding in fraud are

---

[4] Defendants also move to dismiss the fraud-based causes of action on the grounds that (1) Plaintiff fails to allege damages in support of his fraud claims, and (2) Plaintiff fails to plead the fraud claims with sufficient particularity under Federal Rule of Civil Procedure 9(b). (Motion at 14-18.) First, the Court finds that Plaintiff has adequately alleged damages in the form of "compensation decreases, lost business opportunities, and/or other compensation." (Complaint ¶¶ 59, 71, 82, 92.) Second, the Court finds that Plaintiff has pleaded fraud with sufficient particularity under Rule 9(b), which requires that "a party . . . state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b). The Complaint alleges that each Defendant "repeatedly told Plaintiff that they intended to sell Softline at an initial public offering and that Plaintiff would be compensated significantly once the initial public offering occurred." (Id. ¶ 53.) Plaintiff further alleges that those representations were false, that Defendants knew them at the time to be false, that Defendants intended to induce Plaintiff's reliance, and that Plaintiff reasonably relied on those misrepresentations to his detriment. (See, e.g., id. ¶¶ 54-59.) The Court finds that the alleged misrepresentations about the IPO form the core of Plaintiff's fraud claims, and give Defendants sufficient information about the nature of the allegations such that they can make a

7

barred by the various applicable statutes of limitations because Plaintiff knew that Softline would never undergo an initial public offering as of May 1999. (Motion at 19.)

The statute of limitations for Plaintiff's intentional misrepresentation, concealment and false promise claims is three years.[5] The statute of limitations for Plaintiff's negligent misrepresentation claim is two years. Platt Elec. Supply, 522 F.3d at 1054 (holding that the two-year period of limitations under Cal. Code Civ. Proc. § 339(1) applies to actions for negligent misrepresentation). For an action grounded in fraud, the statute of limitations does not begin to run "until the discovery, by the aggrieved party, of the facts constituting the fraud." Cal Code Civ. Proc. § 338(d). Under § 338, fraud claims accrue when the plaintiff discovers the facts constituting the fraud and every element of the cause of action is in place, including damages. Hunt v. GM/Hughes Elecs., 229 F.3d 1157 (9th Cir. 2000). Accrual of such a claim "is postponed until the plaintiff either discovers or has reason to discover the existence of a claim." Slovensky v. Friedman, 142 Cal. App. 4th 1518, 1528-29 (2006).

In this case, Plaintiff alleges that he did not learn that Defendants never intended to take Softline public until December 2006. (Complaint ¶ 37.) Until then, Plaintiff allegedly believed that the Defendants' failure to sell Softline in an initial public offering was "a business decision based solely on factors other than the illegal immigration status of its founders, owners, and officers." (Id.) As discussed, *supra*, Plaintiff was aware in 1999 that he had suffered a financial loss as a result of Defendants' sale of Softline to KPMG.

Nonetheless, based on the allegations in the Complaint alone, the Court cannot definitively say that Plaintiff discovered the facts constituting the alleged fraud, such that the statutory period began to run at a time prior to December 2006. Nor can the Court definitively say that Plaintiff

---

meaningful response.

[5] See Western Filter Corp. v. Argan, Inc., 540 F.3d 947, 951 (9th Cir. 2008) (intentional misrepresentation); Platt Elec. Supply, Inc. v. EOFF Elec., Inc., 522 F.3d 1049, 1056-57 (9th Cir. 2008) (fraudulent concealment); Lazar v. Superior Court, 12 Cal. 4th 631, 638 (Cal. 1996) (holding that "promissory fraud" is a subspecies of an action for fraud); see also Cal. Code Civ. Proc. § 338(d) (setting a three-year period of limitation for "[a]n action for relief on the ground of fraud or mistake").

8

"ha[d] a reason to suspect a factual basis" for his fraud claims prior to the December 2006 date alleged in the Complaint. <u>Slovensky</u>, 142 Cal. App. 4th at 1529. Rather, Plaintiff alleges that, until December 2006, he believed that the sale of Softline was a legitimate business decision, albeit a business decision that resulted in negative impact on his financial interests. Indeed, Plaintiff could have reasonably believed that, in selling Softline, Defendants were merely responding to the exigencies of business. It is impossible for the Court to determine, without further factual development, whether the circumstances were such that Defendants' sale of Softline gave Plaintiff a reason to suspect that the 1999 sale was connected to an underlying fraud.

Accordingly, the Court DENIES Plaintiff's Motion to Dismiss Plaintiff's Second, Third, Fourth and Fifth causes of action.

## V. CONCLUSION

The Court DENIES Defendants' Motion to Dismiss.

The parties shall appear for a Case Management Conference on **February 2, 2009 at 10 a.m.** On or before **January 23 2009**, the parties shall file a Joint Case Management Statement. The Statement shall include, among other things, a good faith discovery plan with a proposed date for the close of all discovery.

Dated: December 23, 2008

JAMES WARE
United States District Judge

9

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Barbara Elaine Tanzillo btanzillo@gcalaw.com
James L. Jacobs jjacobs@gcalaw.com
Julia Marie Adams jadams@epsteingroup.com

**Dated: December 23, 2008**                **Richard W. Wieking, Clerk**

                                            **By:    /s/ JW Chambers**
                                                  **Elizabeth Garcia**
                                                  **Courtroom Deputy**

**United States District Court**
For the Northern District of California